### GATES v. RITCHIE.

Opinion delivered February 18, 1924.

1. BILLS AND NOTES—FAILURE OF CONSIDERATION—BURDEN OF PROOF. —Where the maker of notes admits their execution, the burden is on him to prove failure of consideration.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict sustained by substantial evidence will not be disturbed on appeal.

3. APPEAL AND ERROR—WEIGHT OF EVIDENCE.—The Supreme Court will not pass on the weight of the evidence or the credibility of witnesses; but where the testimony is undisputed, and all reasonable minds must read the same conclusions from it, the trial court should, and the Supreme Court will, declare as a matter of law what such conclusions of fact are.

4. APPEAL AND ERROR—EFFECT OF FINDINGS.—The Supreme Court must give the evidence its strongest probative force in favor of the trial court's findings.

5. CORPORATIONS—SALE OF STOCK—CONSIDERATION OF SUBSCRIPTION. —Where a note was given for an undivided one-third interest in a corporation under a contract whereby the payee agreed to pay the corporation's outstanding debts and take up all the outstanding stock before the maker should be required to pay for his

stock, the consideration was entire, and on the payee's failure to take up all the stock there was a failure of consideration for the note.

6. CONTRACTS—INTENT.—There must be a meeting of minds in every contract, and the intention of the parties must be gathered, not from what they mentally resolve, but from what they express.

7. BILLS AND NOTES—FAILURE OF CONSIDERATION.—A failure of consideration, either *in toto* or *pro tanto,* is a good defense to a suit on a note.

8. BILLS AND NOTES—FAILURE OF CONSIDERATION—RECOVERY.—Where the consideration of a note fails, but the maker is compelled to pay an innocent purchaser, he is entitled to recover from the payee.

Appeal from Pulaski Circuit Court, Third Division; *A. F. House,* Judge; reversed.

*Emerson & Donham,* for appellant.

There was a total failure of consideration for the notes, and appellant is not liable thereon. 67 Ark. 962; 117 Ark. 552; 94 Ark. 282; 99 Ark. 458; 118 Ark. 548; 23 Ark. 196; 58 Ia. 656; 1 Randolph on Commercial Paper, No. 538; 3 R. C. L. No. 142 p. 946; 120 Cal. 511; 23 Ark. 546; 58 Me. 146; 96 Ind. 481; 197 Ill. 600; 49 Atl. 854. Appellant was entitled to recover the amount which he paid on his note, held by an innocent purchaser. 1 Randolph on Commercial Paper, p. 90 No. 551; 55 N. W. 580.

*Gaughan & Sifford,* for appellee.

A finding of fact by a trial court has the same sanctity as a finding by a jury, and will not be overturned if there is any substantial evidence to support it. 140 Ark. 360; 148 Ark. 156. In the absence of proof to the contrary, a party to a contract is presumed to have performed his part. 190 S. W. (Ark.) 113.

WOOD, J. This action was instituted by the appellee against the appellant on two promissory notes of $500 each, dated October 15, 1914, bearing interest at the rate of eight per cent. per annum from maturity until paid. The appellant, in his answer, admitted the execution of the notes, and set up in defense that, at the time he executed the two notes sued on, he also executed another note

to the appellee in the sum of. $1,000. Appellant alleged
that all of these notes were given for the purchase price
of an undivided one-third interest in the telephone sys-
tem at Hampton and Banks, Arkansas, and connecting
lines; that the appellee represented to the appellant that
this property was free and clear of all incumbrances and
indebtedness, except certain items of indebtedness, which
the appellee stated he would pay and discharge. The
appellant alleged that there were certain debts and
incumbrances against the property which the appellee
failed to discharge, and that the property was finally sold
under a judgment, which the appellee agreed to pay;
that the appellee failed to discharge the obligations which
he agreed to discharge at the time the appellant executed
his notes, and that therefore the consideration for the
notes had failed, and that he was not indebted to the
appellee in any sum. He alleged that the appellee con-
tracted to have all stock in the company taken up and
owned by him and B. C. Powell, in order that the manage·
ment might be entirely controlled by them and their asso-
ciates, but that appellee failed to comply with his agree-
ment in this respect. He set up, by way of cross-com-
plaint, that the appellee had transferred the note of
$1,000 for value before maturity, and that the appellant
was sued on this note, and judgment was obtained against
him, which he was compelled to pay. He therefore asked
judgment against the appellee in the sum of $1,000, with
interest.

The cause was, by consent, tried by the court sitting
as a jury. When the testimony was concluded, the appel-
lant asked the trial court to declare that, under the facts,
the appellee was not entitled to recover on his complaint
and that the appellant was entitled to recover on the
counterclaim, and also asked the court to declare,. in
effect, that, if the appellee, as a consideration for the exe-
cution of the notes, was to deliver to the appellant one-
third of the stock of the Hampton Company, unincum-
bered, and, if he failed to do so, they should find that the
appellee was not entitled to recover on the notes; and

further that, if appellant paid the note of $1,000 and the stock was not delivered by the appellee to the appellant, and the debts existing against the Hampton Company at the time of the execution of the notes were not paid, appellant should have judgment on his counterclaim for $1,000, with interest at the rate of eight per cent. per annum from the time of the execution of that note.

The trial court refused to so declare the law, but, instead, rendered judgment in favor of the appellee. The appellant duly excepted to these rulings of the court, and brings this appeal.

1. The issues involved are mainly those of fact, and the correctness of the judgment of the trial court depends upon whether or not there is substantial testimony in the record to justify a finding that the notes in controversy were based upon a consideration which had not failed. The appellant having admitted the execution of the notes, the burden of proof was upon him to show a failure of consideration for the notes, which are the foundation of the action by appellee, and also a failure of consideration for the $1,000 note which the appellant paid, and upon which alleged failure of consideration he grounds his cross action against the appellee.

This court, in the case of *Fowler* v. *Hammett,* ante p. 307, re-announced familiar rules which govern here in determining whether or not the evidence was sufficient to sustain the findings of the trial court. Those rules are: That this court will not disturb the verdict where there is any substantial evidence to sustain it, and will not pass on the weight of the evidence nor the credibility of witnesses, which is the peculiar province of the jury; and, where the testimony is undisputed and all reasonable minds must reach the same conclusion from it, the trial court should, and this court will, declare as a matter of law what the conclusions of fact are which the undisputed testimony proves.

In *Thomas* v. *Thomas,* 150 Ark. 43, we said: "It has been uniformly and repeatedly held that the findings of fact by a circuit court are as conclusive as a verdict of a

jury, and will not be disturbed on appeal unless the evidence is legally insufficient to support them." In *International Harvester Co.* v. *Layton,* 148 Ark. 156, we held that, even though a finding of the trial court be against the decided preponderance of the evidence, it is not our province on appeal to determine where the preponderance lies. Under the often-announced rule of this court we must give the evidence its strongest probative force in favor of the court's findings. *Simms* v. *S. E. Mo. Trust Co.,* 140 Ark. 365.

2. Now, applying these very familiar rules to the facts of this record, we are convinced that the trial court erred in its findings and judgment. The appellant testified that the contract between him and the appellee was that he was to give the appellee $2,000, evidenced by the notes, for one-third of the stock in the Hampton Company. Appellee agreed that he would pay the outstanding debts of the Hampton Company before appellant should pay for the stock, and that one-third of all the stock should be procured and transferred to appellee and his associates. In a letter of January 5, 1915, a little more than two and a half months after the notes were executed, appellant wrote the appellee, restating his contract with the appellee, as follows: "You and Mr. Powell were to deliver to me one-third of the stock of the Hampton Telephone Company, free from all incumbrance. Not only was the stock to be free from all incumbrance, but the debts of the company were to be paid, and you and Mr. Powell were to take care of all of the debts of the company up to the time that I purchased the interest." Two other witnesses, one of whom stated he was present when the agreement was made, and another who stated that he heard appellee say what the agreement was, corroborated the testimony of the appellant as to what the contract was.

But the above testimony of the appellant and his witnesses would not be sufficient, under the above rules, to establish that such was the contract and overturn the finding of the trial court, if the appellee had testified to

the contrary. In answer to appellant's letter of January 15, 1915, the appellee wrote the appellant, saying, among other things: "Your explanation that you are to have a one-third interest, or one-third of the stock, free from all debt up to the time you come in, is exactly correct. This is the contract that we will carry out." And in his testimony the appellee stated that, as to the stock, appellant was to get one-third, and that, as to the debts of the Hampton Company at that time, they were to be paid by the appellee. True, in some places in his testimony appellee states that he was to take up all the outstanding shares of stock that were really issued and paid for— what he designates as the "valid" stock—but, when he was asked specifically whether or not his contract with appellant was that he should take up all the stock that was valid, he answered, "No sir; that I would take up all the stock that was issued." Therefore we conclude that the undisputed testimony shows that the consideration for the notes executed by the appellant to the appellee was that appellee should take up all the outstanding stock of the Hampton Company, and pay all debts of the Hampton Company in existence at the time the notes were executed, and deliver to appellant one-third of the stock of the Hampton Company.

Appellant further testified that the contract with the appellee was that appellee, after getting in the outstanding stock and paying the debts of the Hampton Company at that time, was to finance the company, that is, arrange for the money necessary to conduct the business until the then existing debts were paid and the outstanding stock taken up, and the plant built up and put in shape for consolidation with the Grant Company, which consolidation both parties contemplated, but, as to the terms of consolidation, no final agreement was reached. This testimony of the appellant is corroborated by the testimony of Bailey.

The preponderance of the evidence supports the appellant in his contention that appellee contracted to finance the Hampton Company until its debts existing

at that time were paid and the stock collected in and a third of it delivered to the appellant. It cannot be said, however, that the testimony of the appellant establishing this as a part of the consideration for the contract is undisputed, for the testimony of the appellee was to the effect that, after the notes were executed, until the outstanding debts were paid by appellee and the stock gathered in, and thereafter, the appellee, appellant, and Powell were to finance the Hampton Company, making such improvements as were necessary to keep it going. The testimony of the appellant himself shows that, after executing the notes in controversy, he signed other notes with appellee and Powell, attempting, for a while, to assist them in financing the operations of the Hampton Company.

But the testimony in the record, that appellee was to pay the debts of the Hampton Company existing at the time the notes in controversy were executed, and that he was to get in all the outstanding certificates of stock as a consideration for the notes, and deliver a third of the stock to the appellant, free from incumbrance, is absolutely undisputed. The appellant testified that such was the contract, and the testimony of the appellee, when scrutinized and analyzed, is to the same effect. It does not conflict with the testimony of appellant that such was the contract.

3. The next question is, were the certificates of stock all taken up by the appellee in compliance with his contract? The undisputed evidence shows that they were not. The testimony of Baxter shows that he held certificates of stock to the amount of about $300, and knew of at least $50 more that the appellee did not take up. Appellee, in his testimony, does not dispute this testimony of Baxter, but, on the contrary, in answer to Baxter's letter endeavoring to get appellee to take up this stock, the appellee concedes that Baxter's clients had the stock, and states that those who had paid for same would fare the same as he did. But he did not accept the offer of Baxter's clients to sell their stock at fifty cents

on the dollar. On the contrary, appellee, in his testimony, only says that he took up all the outstanding stock that was *valid*—all that had been paid for—and he contended that the outstanding shares of stock held by Baxter and others had not been paid for, and, when asked why the same were not valid, his only reply was that the stub-book turned over to him by Mason showed that it was not paid for, and that Mason and others told him that it was not paid for. In answer to questions, he stated that he never talked to any of the persons named in the certificates as owners of the stock, and could not swear whether or not they paid for it. While it was marked on the books that the stock was not paid for, he didn't know whether Mason received the money for it or not, and didn't know whether the stock-book was true or not. And, in answer to a direct question, he stated that his agreement with the appellee was *to take up all the stock that was issued.* He also stated, in answer to a direct question, *that he didn't give appellee the stock that he agreed to give him.* True, he qualified his answers and explanation by stating that what he meant was that he was to take up all the outstanding stock that was valid, but he still didn't dispute the testimony of the appellant and his witnesses to the effect that the contract was that he was to take up *all the outstanding stock.* Appellant's testimony concerning this is that they contemplated a consolidation of the Hampton and Grant companies, and that such consolidation could not be effected with any of the Hampton Company stock outstanding.

It occurs to us that the testimony of appellant is exceedingly reasonable, and his testimony, as well as the testimony of Savage, shows that the consolidation with the Grant company could not be effected until all of the outstanding stock of the Hampton company was taken up. As long as there was a considerable amount of outstanding stock in the hands of those claiming to be the owners thereof, these parties holding the certificates could not be ignored, in any effort at consolidation, without the

probability of lawsuits, which appellant doubtless, by his contract, intended to make impossible. At any rate, appellant testified that he would not have entered into the contract—"would not have touched it"—except upon the consideration mentioned, and this taking up of all outstanding stock entered into it. A close scrutiny and analysis of the appellee's testimony shows that such was the contract, and that he had not complied with it *because he meant, at the time, only to take up and deliver to the appellant stock which the appellee conceived to be valid.* But appellee's mental reservations could not change, or in any manner affect, the contract. There must be a meeting of minds in every contract, and the intention of the parties must be gathered not by what they reserve, but by what they express. Appellee confesses that such meaning was not expressed in the contract between him and the appellant.

Learned counsel for the appellee contend, in their brief, that, upon a reorganization, appellee would have been in a position to have issued appellant a sufficient amount of stock to cover his third interest in the company. But, even if this were conceded, it would not be, by any means, a compliance with the terms of the undisputed contract. We conclude therefore that the undisputed evidence shows that the appellee did not comply with the terms of the contract upon which the notes were executed, in regard to gathering in all of the outstanding stock of the Hampton Company and delivering a third of the stock of that company, free from incumbrance, to the appellant. Our conclusion in this particular makes it unnecessary to determine whether the appellee complied with his contract to pay all of the debts of the Hampton Company in existence at the time appellant executed his notes. For, as we view the contract, under the undisputed evidence the consideration was entire, and, unless appellee not only paid the debts, but also took up all of the outstanding certificates of stock, the entire consideration— the foundation upon which the notes were bottomed— falls, and there can be no recovery on the notes.

Here there was a total failure of consideration, because no stock was delivered by the appellee to the appellant, and, under the undisputed evidence, could not be delivered under the terms of the contract until all of the outstanding certificates of stock issued by the Hampton company were gathered in by the appellee, which the undisputed evidence shows he had not done. Appellant had the right, under his contract, to insist that this be done, and he could not have been compelled to accept a third of the stock of the Hampton company until it was done. The law is well settled that a failure of consideration *pro tanto* or *in toto* is a good defense to a suit on a note executed upon such consideration, to the extent of the failure of the consideration, whether in whole or in part. *Pettillo* v. *Hopson,* 23 Ark. 196; *Gale* v. *Harp,* 64 Ark. 462; *Cornish* v. *Friedman,* 94 Ark. 282; *Webster* v. *Carter,* 99 Ark. 458; *Ozark Diamond Mine* v. *Towne,* 117 Ark. 552-555.

The appellant executed his notes to the appellee in consideration that all of the things mentioned in the contract should be carried out before the notes, as between appellee and appellant, constituted any binding obligation upon the appellant. Therefore a failure upon the part of the appellee to perform any of the things specified for him to do under the contract constituted a total failure of consideration, which bars a recovery by the appellee. *Miller* v. *Wood,* 23 Ark. 546. See *Hedge* v. *Gibson,* 58 Iowa 656; 1 Randolph on Commercial Paper, § 538, and § 543, at p. 877, and § 551, at p. 888; 3 R. C. L. § 142, p. 946.

4. It follows also, from the above authorities cited in the appellant's brief, that the appellant is entitled to recover the amount of the note which the appellee had sold for value to an innocent purchaser, and which note the appellant was compelled to pay. This note and the other two were executed for a consideration which, under the undisputed evidence, as we have seen, has failed. 1 Randolph on Commercial Paper, § 551, p. 890; *Foley* v.

*Machine Company.,* 55 N. W. 580. The judgment is therefore reversed, and, inasmuch as the cause seems to have been fully developed, judgment will be entered here dismissing the appellee's complaint, and in favor of the appellant on his cross-complaint against the appellee in the sum of $1,000, with eight per cent. interest from October 15, 1914.