ENGLISH v. SHELBY.

Opinion delivered January 4, 1915.

1. CONTRACTS—CONSTRUCTION—REPUGNANT CLAUSES.—If, in a contract, there is repugnancy between general clauses and more detailed specific clauses, the latter will govern.

2. CONTRACTS—CONSTRUCTION—GENERAL AND SPECIAL PROVISIONS—INTENTION.—Special provisions in a contract will not be permitted to annul general provisions therein, where both can stand together, and where the intention of the parties appears to be that they should so stand.

3. CONTRACTS—CONSTRUCTION—CONTEMPORANEOUS AGREEMENTS.—In the construction of any instrument, where doubt arises as to its meaning, the court may consider the contemporaneous agreements of the parties with respect to the subject-matter.

4. LOCAL IMPROVEMENT—STREET IMPROVEMENT DISTRICT—GUARANTY.—A contract made with a contractor by the board of improvement of a street improvement district, guaranteeing that no repairs would be needed within five years from the completion of the work, and a bond to that effect was given by the contractor; *held*, under the evidence, the bond was a guarantee that the street should remain in perfect condition for the period of five years, and that no repairs would be required within that time.

5. SURETYSHIP—LIABILITY OF PRINCIPAL.—The liability of the sureties on the bond of a contractor under a contract to pave a city street is dependant upon the liability of their principal, the contractor.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed.

STATEMENT BY THE COURT.

Appellee Shelby entered into a contract, whereby he undertook to build a street according to plans and specifications furnished by the Board of Commissioners of Street Improvement District No. 135 of the city of

Little Rock, and its engineer, E. A. Kingsley. This contract provided that the engineer appointed by the board should be arbitrator between the contracting parties, and should decide all disputes "involving the character of the work, the compensation to be made therefor, or any other question arising under the contract;" and that the engineer should "have the option of making any changes in the line, grade, plan, form, position, dimensions, or material for the work contemplated, either before or after construction is begun, and all other explanations or directions necessary for carrying out or completing satisfactorily the different descriptions of work contemplated and provided for in this contract and specifications."

The contract for the construction of the streets was dated June 9, 1909, and provided that the streets were "all to be built in a good, firm and substantial manner, as shown by plans and specifications prepared by E. A. Kingsley, engineer, and now on file in his office, said plans and specifications being hereby made a part of this contract the same as if copied herein at length; * * * the work to be done in every respect according to plans and specifications, and to be guaranteed by the party of the second part for a period of five (5) years; and the party of the second part hereby agrees that he will furnish a bond of good and sufficient security, to be approved by the party of the first part, for his due performance of this contract, such bond to be in the sum of one hundred thousand dollars ($100,000), and to be covenanted that party of the second part shall in all respects perform this contract.

"Party of the second part further undertakes and agrees that the plan of said work, the composition of the materials specified, and the character in which it will be done by him, are such that no repairs of any kind will be required on any portion of said street, or any of said work for a period of five (5) years from its completion. And it is hereby guaranteed that said street, when completed will remain in perfect repair for a period of five (5) years. If any repairs are needed from any cause

during this period, they shall be done and paid for according to the provisions and specifications, and party of the second part agrees to furnish a good and sufficient bond, to the satisfaction of the party of the first part, on the condition that said street will remain in perfect repair for the said period of five (5) years.''

The street was finished in accordance with the contract, and the work was approved by the engineer and accepted by the board, whereupon, in accordance with this original contract, appellee Shelby executed what was known as a ''maintenance'' bond, dated January 26, 1910. This maintenance bond contained the following guaranty.

''The work shall be done in such a substantial manner that no repairs will be required for a period of five (5) years. Should repairs become necessary, however, during any such period, then the contractor will be required to make good any damage to the work, or any defect in the workmanship, materials or condition of the work which may have occurred during said period, and which made such repairs necessary. The guarantee period shall date from the time of final acceptance of the work by the board. Said contractor shall keep said work in good repair during the time of the guarantee period, and shall make all repairs at such time as directed by the board or city engineer of the city of Little Rock. It shall be the duty of said contractor to notify the board, or, if it has turned the improvement over to the city of Little Rock, then to said city, in writing, at least thirty (30) days prior to the expiration of said guarantee period, to inspect the work, and unless the contractor shall furnish said notice, the obligation to maintain the said work in proper condition shall continue in force until such notice shall have been furnished, and for thirty (30) days thereafter, and until such time as the contractor shall place said work in proper condition, if notified to do so within the thirty (30) days' period. It is understood and agreed that this guarantee shall cover all repairs growing out of the imperfection or unsuitability of material or

composition, all defects in workmanship, and shall cover all other excessive deterioration, more especially described, as follows: Any holes or cracks in the pavement, and any defects resulting from the deterioration of the wearing surface or foundation. The pavement, at the expiration of the guarantee period, shall be in good condition, present a surface so true and even that it will in no way be an obstruction to travel, and have a drainage so perfect that water may collect in no place to a depth of more than one-quarter of an inch. The determination of the necessity for repairs shall rest entirely with the board, or, after it has turned the street over to the city of Little Rock, with the city engineer of said city, whose decision upon the matter shall be final and obligatory upon the contractor; and the guarantee herein stipulated shall extend to the whole body of the improvement, and all its appurtenances, and the repairs required under it may extend to a total reconstruction of the whole body of the improvement, if, in the judgment of the board, or of such city engineer after the board has turned the street over to the city, such total reconstruction shall become necessary, by reason of any defects in the original materials or construction.''

It is undisputed that repairs to the street became necessary, the cost of which was admitted to be $3,859.73, and the contractor was called upon to make them, and having declined to do so he was sued, together with his sureties, for the cost thereof.

Appellees contend that, under the terms of the maintenance bond, they were only bound to make repairs that were caused by the fault of the contractor in using defective material, or doing defective work, and that the bond was not liable for any repairs not due to those causes. The contractor further contended that, after the acceptance of the work, he had been required by the commissioners, to make certain repairs, and that he had done so under protest and at a cost to himself of $2,320, and he prayed judgment for this sum. The contractor further contended that the repairs which he made, as well

as those he was called upon to make, were all rendered necessary by the defective foundation, and that this foundation was put in under the supervision and with the approval of the engineer employed by the district, and that a proper foundation would have been constructed had it been required and paid for. The contractor testified that he had never before built, nor had he ever seen a street built, with a foundation like that used in this district, and that the trouble resulted from the use of plans which permitted this foundation, and not from any defective material or workmanship.

The city and the commissioners of the district contended that the object and terms of the bond were to secure a street that would last at least five years, and that if repairs were needed within that time the principal and surety in the bond would make them. The proof on the part of the appellants was to the effect that the street had not been turned over to the city and that this was never done until the maintenance bond had expired.

It was admitted that the sureties signed the bond for a money consideration, and not for accommodation, and it is not contended that there was any disagreement between the engineer of the improvement district and appellee as to the method of building the street.

The cause was submitted to the court sitting as a jury, and the bond was construed as contended for by appellee, i. e., that the contractor and his sureties were liable only for repairs made necessary by defective workmanship or material. The court made findings of fact to the following effect:

1. That the plans were prepared by the commissioners and were executed by the contractor, the work being supervised by the district's engineer and was accepted as having been performed as required by the contract.

2. That the contractor had made all repairs for which he was liable.

3. That the necessity for repairs resulted from the fact that the street was laid in part on a natural

foundation, when the board, under its contract had a right to require it laid on a concrete foundation.

4. The court found the cost of these repairs would be $3,599.73.

The court further found that such repairs as the contractor made had been voluntarily made and refused to allow him anything therefor.

The court was asked to declare the law as follows:

"11. Under the bond that is the basis of this suit, defendants are obligated to make the repairs at the time and in the manner described in said bond without regard to whether the necessity for said repairs was occasioned by poor material and workmanship on the part of the contractor, Shelby, or by faulty plans for the construction of said pavement prepared by the engineer, the obligation of the parties in said bond being absolute that they will make all repairs in said street, whether the necessity for said repairs was occasioned by faulty construction on the part of the contractor, or by faulty plans on the part of the district."

The court refused to make this declaration of law, but declared the law to be that there was no liability against appellees for the cost of the repairs, and judgment was rendered accordingly, and both sides have appealed.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellants.

1. The bond bound the contractor to maintain the pavement in good condition for five years and to make all necessary repairs to correct bad conditions, whether caused by faulty work or faulty plans. 89 Ark. 95; 35 S. W. 1125; 52 Pac. 28; 103 S. W. 93-100; 38 *Id.* 458-463; 171 Fed. 29, 35-6-7; 101 N. E. 162-3; 45 N. E. 1097-1099; Jones on Const. of Trade Contracts, § 220; 58 N. H. 401; 17 A. & E. Enc. L., p. 25, § 14; 62 Ark. 595.

2. The construction contract defines the conditions of the bond to be given, in accordance with our contention and when read with it removes all doubt and demonstrates the error of the judgment. The guaranty was

intended to mean what the contractor intended it should mean. 171 Fed. 29. The two instruments should be construed together as a whole. 9 Cyc. 580 (6) ; Lawson on Contracts, § 397; 45 Ark. 17-28; 9 Cyc. 582 (7) ; 79 Pac. 1095; 171 Fed. 38; 52 Pac. 28.

3. The bond should be interpreted according to the natural import of its language and not so as to favor the surety. 16 Pet. 528-537; 163 Fed. 690-5.

*S. L. White* and *Coleman & Lewis,* for appellees.

1. All the repairs necessary were due to the failure of the board and its engineer in furnishing insufficient plans and specifications—a failure on their part to put in a concrete foundation. The contractor was only bound for repairs of defects caused by use of bad material or bad workmanship, due to his fault. 107 S. W. 244; 97 *Id.* 1; 58 Pac. 474; 54 N. E. 661, citing fourteen cases in point.

SMITH, J., (after stating the facts). (1-2) There is but little conflict in the evidence, and it is agreed that the decision of this case turns upon the interpretation given the bond sued upon. Various rules of construction are called to our attention to enable us to discharge this duty. Appellee, of course, concedes that the first sentence of the guarantee would impose an absolute liability, if it stood alone; but it is said that the effect of the subsequent recitals of the guaranty is to limit this liability, and to make that liability contingent upon these subsequent recitals. It is a rule of construction that, if there is a repugnancy between general clauses and more detailed, specific clauses, the latter will govern. But this, like all rules of construction, is intended to aid in the ascertainment of the intention of the parties to the instrument construed. And this meaning is to be derived from a consideration of the whole instrument. However, we find here no such conflict between the opening sentence of this guaranty and the remaining recitals thereof, as requires us to give the words there employed any other than their ordinary meaning. The guaranty is first expressed in general terms and afterward with

more detail and particularity, but no actual conflict or repugnancy of recitals appears, and special provisions will not be permitted to annul general provisions, where both can stand together, and the intention of the parties appears to be that they should so stand.

(3) In the construction of any instrument, where doubt arises as to its meaning, we may consider the contemporaneous agreements of the parties with respect to the same subject-matter, and when that is done in the instant case, we find that the bond sued on was executed in compliance with the contract under which the improvement was constructed. The material part of that contract is set out in the statement of facts, and there appears to be no doubt as to the character of the bond then contemplated. The language there employed appears to be susceptible of only one construction. And if, in fact, such a bond was executed, as that contract required, then we may be assured of the proper construction to give it. There was no other purpose in executing this bond. When the work was completed there was no controversy about its having been done as required by the plans, and there is no such controversy now, and if this bond is to be given a construction which makes its execution of value to the district, we must hold that it intended to guarantee the work against the necessity for repairs for a period of five years.

The trouble with the street was that holes and cracks appeared in it and there was a wearing away of its surface, and its foundation was defective. These defects appear to be covered by the terms of the guaranty.

Appellees insist that no liability should be imposed upon the contractor because the foundation used was approved by the engineer. The foundation was, indeed, thus approved; but it was within the terms of the contract and was used without protest on the part of any one. Thereafter the bond sued on was executed, in evident compliance with the construction contract, and no question was made that a foundation had been employed

which would impose a burden the contractor had not agreed to assume.

(4) We think the proper construction of the bond sued on was that it was a guarantee that the street should remain in perfect condition for a period of five years, and that no repairs would be required within that time.

(5) The sureties in this case became such for a money consideration, and their liability is dependent upon the liability of their principal.

It follows, therefore, that the court properly refused to render judgment in favor of appellees for the repairs made by the contractor, and the judgment of the court, dismissing appellants' cause of action for the cost of the repairs which the contractor refused to make, is reversed, and as the cost thereof is undisputed, judgment will be rendered here for that amount.