## Nakdimen v. Brazil.

Opinion delivered October 15, 1917.

1. CONTRACTS—SALE OF LAND—ASSUMPTION OF MORTGAGE.—N. purchased land from B., the deed to N. reciting that "this deed is given subject to the mortgage for $15,000 in favor of   *   *   *, which the said grantee assumes and agrees to pay." *Held*, N.'s undertaking was to assume payment of the mortgage, and the amount mentioned is merely descriptive of the instrument, and not a limitation upon the amount to be paid.

2. CONTRACTS—SALE OF LAND SUBJECT TO MORTGAGE.—N. purchased land from B. which was subject to a mortgage in favor of a building and loan association, N. agreeing to assume this mortgage. *Held*, under the contract that N. had the right to repay the amount of the loan, and that when he elected to repay the loan, that he was not required to both repay the loan, and also pay monthly stock assessments.

3. CONTRACTS—TERMS—BOND AND MORTGAGE.—Where a contract between two parties is expressed in a bond and mortgage, the terms of those instruments will control the interpretation of the contract.

4. CONFLICT OF LAWS—SPECIFIC PERFORMANCE—LANDS IN ANOTHER STATE.—Courts of equity may specifically enforce a contract to convey land situated in another State.

Appeal from Sebastian Chancery Court, Fort Smith District; *W. A. Falconer,* Chancellor; modified and affirmed.

*Oglesby, Cravens & Oglesby,* for appellant.

1.   As between appellant and the loan company the only questions involved are the right of plaintiff to pay off the mortgage, the amount he should pay, and, if paid, his right to be subrogated to all the interest and equities of Brazil.

The issue between plaintiff and Brazil is whether plaintiff is compelled to pay not only the $15,000 loan with interest, but also to pay the monthly installments due by Brazil on the stock.   It is the contention of plaintiff that under his purchase contract he only assumed and agreed to pay the $15,000 borrowed by Brazil.   The option, the deed and all the testimony sustains this contention.   He is not liable for the stock payments due, but only for the loan and interest.

The court erred in its ruling as to the stock payments; they should be charged to Brazil.

2.   It also erred in decreeing specific performance as to the land in Oklahoma.   It has no jurisdiction over the lands.   But if it did it was error to enter judgment for $3,000 as the value of the land and requiring plaintiff to pay if he did not execute a deed in forty days.

3.   The court erred in the amount decreed to be paid the loan company, as he was only liable for the $15,000 and interest to March 28, 1916.   It was certainly error to require plaintiff to pay the $618.75 stock installments and the fines.

*Kimpel & Daily,* for R. E. Brazil.

1.   The burden is upon him who alleges fraudulent representations to establish same by evidence that is clear and convincing.   None are proven.   He agreed to pay off the mortgage according to its terms and recitals, and not merely $15,000.   The words are descriptive merely of the obligation, and can not be considered as limiting the amount.   75 S. W. 661, 105 Ia. 122; 130 Mass. 460.   See also 51 Conn. 11; Jones on Mortg. (5 ed.), § 735; 3 *Id.* (7 Ed.), § 739a.

The loan was to be paid by maturing the stock.   Plaintiff knew this.

2. The court had jurisdiction over the persons who were parties, and properly directed a deed to be executed or pay the $3,000, the value of the land. It was the duty of the court to administer complete relief. Story, Eq. Jur. (13 Ed.), par. 1291, also pars. 743-4; 55 Ark. 639; 6 Cr. 160; 24 Oh. St. 474; 37 N. Y. 499; 45 Ark. 212; 45 Ark. L. R. 360; 194 S. W. 234, and many others.

3. The testimony shows the Oklahoma lands were worth $3,000.

4. The findings of the chancellor will not be disturbed on appeal unless clearly against the weight of the evidence.

*John F. Lawrence* and *A. J. Bryant* of Colorado for the loan company.

1. This was a Colorado contract and must be construed by the laws of that State. The bond and mortgage cover the loan with interest thereon and all stock dues and fines, etc. Dues, fines and expense charges are allowed by the laws of Colorado. Colorado statutes, § § 1, 2, 6 and 7; Thompson on Building & Loan Assn., pp. 272-410; 99 Mo. 96; 93 N. Y. 474-480-1; 25 Oh. St. 186-205, 206-7; 19 W. Va. 769; 47 Pa. St. 352; 57 N. W. 142; 140 Ind. 662; 77 N. W. 889.

2. When one buys property subject to a recorded mortgage he is charged with notice of the contents of the mortgage contract. 2 Jones on Mortg. (7 ed.), § 739-a; 105 Ia. 122; 74 N. W. 750; 19 N. E. 382; 13 *Id.* 476. Nakdimen was bound by the record and also had actual notice and was bound. He also assumed and agreed to pay the mortgage according to its terms, and is estopped to set up usury or other invalidity. 2 Jones on Mortg. (7 ed.), § § 735-6-A, 744-5; 45 Ark. 301; 48 *Id.* 258; 66 *Id.* 121; 46 S. W. 370; 49 *Id.* 353; 81 N. W. 308, etc.

3. The contract will be construed with reference to the law of the place where it is to be performed, or with reference to the law which the parties stipulated shall govern. The contract is valid in Colorado, and its laws govern. 71 Kan. 185; 79 Pac. 1077; 110 Fed. 859; 101 *Id.*

12; 33 S. E. 355; 181 U. S. 227; 69 S. W. 312; 84 *Id.* 717; 137 Ala. 119.

4. In the absence of fraud and mistake, a building and loan contract must be considered as a whole and as the rate of interest finally to be paid is necessarily contingent upon the profits ultimately to be realized, a claim of usury can not be founded upon such a contract by a member of the association. 39 Okla. 12; 26 N. J. Eq. 355; 19 S. W. 917-18; 63 *Id.* 979; 1 Wallace, 540; 49 S. W. 633; 181 U. S. 227; 116 Fed. 735.

5. The findings and decree are fully sustained by the testimony.

McCULLOCH, C. J. Brazil owned a valuable piece of real estate in the city of Fort Smith, and on January 3, 1916, mortgaged the same to the Midland Savings & Loan Company, a building and loan association, incorporated under the laws of the State of Colorado and doing business at the city of Denver, to secure a loan of money in the sum of $15,000 made by said association to Brazil upon shares of stock in accordance with its plan of lending money to its shareholders. The mortgage recited that Brazil was the holder of 225 shares of stock of a certain class in the association and had obtained a loan of $15,-000 thereon, and the condition of the mortgage was that the mortgagor should pay "the principal sum of $15,000, with interest thereon, and the premium bid for obtaining said loan at the office of the said party of the second part in Denver, Colorado, according to the tenor and conditions of a certain first mortgage bond of even date herewith, for the said sum, interest and premium, executed and delivered by the said second party, contemporaneously with the instrument."

The note or bond secured by the mortgage also contained a recital as to the loan of $15,000, and the pledge of said shares of stock as collateral security for the loan and the obligation of the mortgagor to pay to the association "the sum of two hundred forty-eight and 75/100 dollars monthly, on or before the last day of each month,

of which sum one hundred twenty-three and 75/100 dollars is the monthly installment due upon said shares of stock above described, and the sum of one hundred twenty-five and no/100 dollars is the monthly interest.due upon said principal sum, also such fines as may accrue upon delinquent monthly payments upon said stock and interest, according to the by-laws and resolutions of said company governing the same, said interest and fines to be credited on the debt, until said principal shall have been paid in full, by said shares of capital stock having matured to their par value, or until otherwise paid as herein provided.''

The bond also contained the following stipulation with reference to repayment of the loan prior to the final maturity of the shares of stock:

''The undersigned may fully repay this bond at any time before the stock and loan have been carried eighty-five months, by returning to the company the full amount, or balance then due, of said principal sum, together with all interest and fines delinquent and due, and all amounts due for insurance, abstract, taxes and other advances made by the company, then due and unpaid, with interest thereon from the time of payment at 10 per cent. per annum, and repayment charges, if any; and in case of such repayment, if the owner wishes to cancel the certificate, the loan shall be entitled to a credit of the withdrawal or cash surrender value of said shares of stock, as provided by the rules and regulations of the company, and by the certificate itself, on surrender thereof.''

Brazil sold and conveyed the property to Nakdimen, the latter assuming payment of said mortgage as a part of the consideration for the conveyance. The deed to Nakdimen bears date of March 23, 1916, and contains the following recital:

''This deed is given subject to the mortgage for $15,-000 in favor of the Midland Savings & Loan Company of Denver, Colorado, which the said grantee assumes and agrees to pay.''

There was an option contract between Brazil and Nakdimen, the precise date not being stated, but the deed was made pursuant to the contract, which contains a similar recital with respect to the assumption of the mortgage debt. The other considerations for the conveyance were also set forth in the contract, among which was an agreement on the part of Nakdimen to convey to Brazil a certain tract of land situated in the State of Oklahoma. A controversy subsequently arose between Nakdimen and the building and loan association concerning the amount necessary to discharge the mortgage debt, the former claiming the right to satisfaction of the debt by payment of the sum of $15,000, and the latter insisting on additional payments of accumulated interest and monthly dues on the shares of stock. Nakdimen failed to convey the Oklahoma land to Brazil in accordance with the terms of his contract and also withheld the sum of $625 of the cash consideration to be paid in addition to the other considerations referred to.

This action was instituted in the chancery court by Nakdimen against Brazil and the building and loan association, in which he claims that according to his agreement with Brazil he was only to pay to the building and loan association the sum of $15,000, and offered to pay that sum and asked that the total sum due by Brazil to the building and loan association be ascertained by the court and a decree rendered against Brazil for the excess, the same to be deducted from the balance in his hands due Brazil under the contract of purchase. Brazil filed a separate answer, denying the allegations of the complaint with respect to the agreement, and alleging that according to the contract Nakdimen was to pay and satisfy in full the mortgage to the building and loan association, but that he failed to do so, and has also withheld the sum of $625, and failed to convey the Oklahoma lands. The answer of Brazil was made a cross-complaint containing a prayer for specific performance of the contract, and that Nakdimen be required to convey the Oklahoma lands in accordance with the contract, or pay the value

thereof, the sum of $3,000, and also that he recover of Nakdimen the balance of $625, alleged to be due under the contract. The building and loan association filed an answer and cross-complaint, denying the allegations of the complaint with respect to the agreement to pay only $15,-000, and asked for a foreclosure of the mortgage, alleging an amount of balance to be due in accordance with an itemized account, as follows:

Principal ........................................................................$15,000.00
Five months' interest.................................................    625.00
Stock dues for same time, five months......................    618.75
Fines at the rate of 2 per cent.................................     25.00
Abstract fees............................................................     23.50

Total ......................................................................$16,292.25

The cause was heard by the chancellor on oral testimony reduced to writing and brought into the record, together with all the writings evidencing the agreement between the parties. The court decreed in favor of the building and loan association for foreclosure of the mortgage, finding the sum to be due thereunder $16,268.75, including all the items set forth in the account copied above, to bear interest from July 1, 1916. The decree was also in favor of Brazil against Nakdimen for the recovery of the sum alleged to be the balance due on the consideration, and also requiring Nakdimen to convey the Oklahoma lands in accordance with the contract, or pay the sum of $3,000, found to be the agreed value. Nakdimen has appealed.

(1) There is a conflict in the testimony as to the oral negotiations and conversations between the parties with respect to the amount of the debt to the building and loan association which Nakdimen was to assume and pay. The language of the contract is, however, free from ambiguity and must be interpreted by the court according to its obvious meaning. The undertaking was to assume payment of the mortgage and the amount mentioned is merely descriptive of the instrument and not a limitation upon the amount to be paid. *Shanahan* v. *Perry,* 130

Mass. 460; *Johnson* v. *Nichols,* 105 Ia. 122. The evidence is not sufficient to show fraudulent misrepresentation concerning the amount of the mortgage debt. We are, however, of the opinion that the court decreed recovery of an excessive amount by including the item of $618.75 monthly dues on the shares of stock. We find nothing in the contract which warrants the imposition of that charge in addition to the amount advanced on the stock as a loan.

(2)   This is a Colorado contract, the debt being payable there and being stipulated in the contract that it shall be so treated, it must be interpreted in accordance with the laws of that State. The statutes of that State authorize such a charge by building and loan associations without offending against the usury laws of the State; but such is not the effect of the particular contract involved in this case, which contains an express stipulation that the owner may discharge the obligation at any time prior to the maturity of the shares of stock "by returning to the company the full amount, or balance then due, of said principal sum, together with all interest and fines delinquent and due, and all amounts due for insurance, abstract, taxes and other advances made by the company, then due and unpaid, with interest thereon." Nothing is said in the stipulation about the payment of dues on stock, and it would be obviously unjust if it did include the stock payment, for that would constitute double payment. The justice of the matter would call for a credit of the amount of stock dues actually paid, and we can not, by any stretch of the language employed in the contract, interpret it to mean that the stock dues must be paid in addition to the amount of the loan. The last clause of the stipulation concerning the cancellation of certificate has nothing to do with the amount to be paid in discharge of the loan, except to provide that the payments already made shall be credited on the loan in the event the stock certificate is to be surrendered. Regardless of Brazil's right under the contract, either to continue the stock by keeping up the payments, or to withdraw it, the obligation of Nakdimen in assuming the mortgage was merely to satisfy it in ac-

cordance with its terms, which do not include the payment of any dues on the stock.

The term ''repayment charges'' is too indefinite to mean anything in the absence of further provision defining it, and there is none.

(3)   Counsel for the company rely on section 29 of the by-laws as sustaining the right to require payment of delinquent stock dues. The section reads as follows: ''When the loan becomes due or in case of foreclosure the withdrawal value of stock held as collateral shall be applied in payment of the loan and all arrearages of dues, interest and premiums for reissuance, fines and other charges, if any, according to the company's books, and the deficiency shall be collected from the remaining securities held by the company.''

This provision relates to credit of withdrawal value after deducting the charges mentioned and does not require payment of delinquent stock dues on repayment of a loan, where there is no credit on the loan of the withdrawal value of the stock. Nor does section 32 of the by-laws providing that ''3 per cent. of the par value of all stock shall be deducted from the first payment or payments made on same, to be used as an expense fund,'' have any application to the question of repayment of a loan. Neither the by-laws nor the bond provide for payment of the 3 per cent. so specified as a prerequisite to the repayment of a loan.

Moreover, the bond and mortgage constituted the last expression of the terms of the contract and must control. *National Annuity Association* v. *Carter,* 96 Ark. 495.

(4)   We think the chancery court erred in including that item in the amount of the foreclosure decree. The decree in Brazil's favor for the recovery of the balance of the purchase money, and for the conveyance of the Oklahoma land, or the recovery of $3,000 in lieu thereof, is correct. The court had jurisdiction to render the decree compelling Nakdimen to convey the Oklahoma land, notwithstanding the fact that the lands were situated in an-

other State and beyond the jurisdiction of the court. *Fegan* v. *Anderson*, 128 Ark. 353, 194 S. W. 234.

The evidence was sufficient to warrant the finding that the parties themselves agreed upon the valuation of $3,000, and the court was correct in requiring that sum to be paid in the alternative. The decree is modified by reducing the amount to be recovered under the mortgage to the extent of the sum of $618.75, and, as so modified, the decree will be affirmed.