BRACY BROTHERS HARDWARE COMPANY *v.* HERMAN-MCCAIN
                 CONSTRUCTION COMPANY.

Opinion delivered March 10, 1924.

1. EVIDENCE—PAROL EVIDENCE AS TO AMBIGUOUS CONTRACT.—Parol evidence is admissible to explain the meaning of an ambiguous contract.

2. CONTRACTS—CONSTRUCTION.—Where there is doubt as to the meaning of a contract, it will be resolved against the party who prepared the contract.

3. EVIDENCE—AMBIGUOUS CONTRACT.—Under a contract whereby the plaintiff agreed to furnish kitchen and mess-hall equipment according to the specifications of the supervising architect, but which the plaintiff contended was not meant to include installation of the equipment, but only to set the same in place, *held* that there was such ambiguity in the contract as to admit parol testimony to explain the contract.

4. CONTRACTS—CONSTRUCTION.—Under a contract whereby plaintiff agreed to furnish kitchen and mess-hall equipment according to the specifications of the supervising architect, which required the equipment to be furnished and installed in the kitchen and mess-hall building, the plaintiff was required to install and set

in place the equipment, notwithstanding a statement in a subsequent paragraph of the contract that the plaintiff's offer did not include plumbing, gas fitting, and electric work other than as a part of the specified equipment.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; affirmed.

*Carmichael & Hendricks,* for appellant.

*Buzbee, Pugh & Harrison* and *A. S. Buzbee,* for appellee.

WOOD, J.   This is an action by the appellant against the appellee.  The appellant alleged that on December 3, 1921, it entered into a contract with the appellee under which appellant was to furnish certain equipment for the kitchen and mess-hall at Fort Logan H. Roots for the United States Public Health Service Hospital; that the appellant was to receive as compensation for such equipment the sum of $8,250; that the appellant furnished the equipment and performed all its incidental duties under the contract, and there is now due the appellant from the appellee the sum of $737, which appellee, on demand, refused to pay, and for which sum it prayed judgment.. Appellant exhibits with its complaint, as the foundation of its action, the following:

"Little Rock, Arkansas, December 3, 1921.   Herman-McCain Construction Co., Reigler Building, Little Rock, Arkansas.   Gentlemen:  We take pleasure in making you quotation on kitchen and mess-hall equipment for the United States Public Health Service Hospital at Fort Logan H. Roots, North Little Rock, Ark., as per specifications supplemented by Jas. A. Wetmore, acting supervising architect, as listed under items 780 to 821, inclusive, for the sum of eight thousand two hundred and fifty dollars ($8,250), 50 per cent. of which is to be paid on delivery of said goods to kitchen and mess-hall at Fort Logan H. Roots, 40 per cent. when goods are set in place, and the balance as soon as inspected and accepted by government.

"Our quotation does not include plumbing, gas-fitting or electric work, other than that which is a part of

the specified equipment. This equipment to be manufactured as per said specification and delivered by us to said kitchen and mess-hall, and each piece of equipment set in place and position, as designated by blue-print submitted by above-mentioned architect with these specifications.

"We to furnish you with blue-print showing the proper location of necessary waste and supply water, gas and steam pipe.

"Assuring you of our desire to give you good service and equipment second to none, and hoping that we will be favored with your order, we are. Above goods to be shipped March 15, 1922. Yours very truly, Bracy Bros. Hardware Co. by E. H. Krebs. Accepted. By Herman-McCain Cons. Co., by H. C. McCain, Pres., Secy. and Treas."

Appellee, in its answer, denied that appellant performed the duties which it agreed to perform under the contract set up in its complaint. Appellee alleged that it was required and caused to expend the sum of $737 to have the balance of the work done which appellant had agreed to do under its contract and had failed to do; that appellee offered appellant the opportunity to do the work and receive the pay therefor, and appellant refused. Appellee alleged that the sum of $737 was a reasonable amount for the work it had to do because of appellant's failure to perform its contract. Appellee therefore prayed that appellant's complaint be dismissed. The cause was, by consent, tried by the court sitting as a jury.

E. H. Krebs testified that he had been in charge of the builders' hardware department of appellant for nineteen years. He identified the letter which is attached to and made a part of the complaint upon which the action was founded, and which constituted the contract between the parties. This contract refers to items 780 to 821 of specifications for kitchen and mess-hall equipment for the U. S. Public Health Service Hospital at Fort Logan H. Roots. Section 780 of the specifications is as follows: "Kitchen Equipment. 780. Scope of the work—The

following equipment is to be furnished complete in every detail and installed in the kitchen and mess-hall building.'' The equipment called for was furnished by the appellant and accepted by the government. It was delivered by the appellant to the hospital building, and by the appellant uncrated and assembled. The range was a very large one, and came in more than fifty pieces. It was set up and bolted together—that is, assembled by the appellant. Appellant also assembled the electric dish-washer, several large boilers, and other equipment. After assembling the equipment, appellant placed it in position, as called for in the contract. Some days later appellant was notified by the appellee to get a plumber out there and connect up the equipment. Appellant replied that it was not required to do so under the contract, and it therefore refused to do it. Appellant had stated in the contract that it was to do no plumbing, gas-fitting, or electrical work except that which was a part of the specified equipment. Appellant was not a plumber, and that is the reason it put in the offer the provision that it was not to do the plumbing, gas-fitting, or electrical work, other than what was a part of the specified equipment. Witness understood the meaning of the word ''install,'' and that is what witness, acting for the appellant, did not offer to do, but offered only to assemble and set in place.

Appellee claimed that it had the plumbing done, after the appellant refused to do it, and the controversy is over $737, which amount the appellee holds out of the contract price. Witness wrote the contract, and included in it §§ 780 to 821, inclusive. He had these specifications before him when he wrote the contract. Appellant does not dispute the amount in controversy. The appellee has the right to retain it if it is a proper charge. Appellant's factory submitted blue-prints showing where it would be necessary for the plumbers to bring up pipes for the openings. Witness saw a good many pipes there, but didn't put them there. The object of the blue-prints was to show the height the plumbing should be so as to cor-

respond with the height of the connection of the equipment.

Henry C. McCain testified that he was the secretary and treasurer of the appellee. When appellee received specifications for the hospital equipment it asked for bids from the subcontractors. Appellee is not a builder, plumber, or furnisher of kitchen material, and it does not do electrical work. Each item of the specifications appellee submitted to appellant was just as appellee received it from the government. After appellant had assembled the equipment, the appellee demanded that it connect it, which appellant refused to do. Appellee then had the work done, and retained the amount out of the contract price. In the contract of the appellee with the government there was a whole section devoted to plumbing, and it is appellee's understanding of that contract that the one who furnished the equipment was to connect it. The appellant was required to furnish a blue-print showing where the plumbing should be brought up, so that it would connect with the equipment. The plumbers did the roughing-in and brought the connections up to where the equipment could be connected with it. Witness had had four years' experience in building, and it was his understanding that, if appellant had agreed to install this kitchen equipment, without reference to plumbing, it would be appellant's duty to do what the plumber did— that is, run all pipes up to make connections, unless that part had been provided for under the specification of plumbing. It was necessary to have the blue-prints to show how high the connections would be to correspond with the equipment. Witness read the contract carefully, and understood the meaning of the words, "install," "plumbing, gas-fitting and electrical work." The contract states that it does not include plumbing, gas-fitting or electrical work "except of the specified equipment." Appellee's construction of the contract is that appellant was required to install the equipment.

The appellee offered to prove by several witnesses that the word "install," as used by men trained in

plumbing, engineering and architecture, means ''set in place—to connect up and fix ready for use.'' The appellant admitted that these witnesses would so testify.

The appellant asked the court to declare the law to be that appellant had performed the contract when it assembled and placed the equipment in the place and position it was to occupy, and it was not required, under the contract, to connect the same with the mains; that the appellant, having performed its duty and obligation under the contract, was entitled to recover of the appellee the sum of $737. The court refused to so declare the law.

The court, at the request of the appellee, declared the law to be that it was the duty of the appellant, under the contract, to install the equipment ready for service, and that the appellant, having failed to perform this duty, could not recover in the action. The appellant duly excepted to the rulings of the court. The court thereupon entered judgment in favor of the appellee, from which is this appeal.

The contract which is the foundation of appellant's action was written by the appellant, and therefore, under a familiar rule of law, if any of its terms are ambiguous so that it becomes necessary to construe it, parol evidence may be admitted to throw light upon the meaning of the contract. Where there is doubt as to the meaning of the contract, such doubt must be resolved against the party who prepared the contract. *Wisconsin & Arkansas Lumber Co.* v. *Fitzhugh,* 151 Ark. 81, and cases there cited.

The letter of the appellant to the appellee, which was accepted by the latter, evidenced the contract between the parties, and there was such ambiguity in its terms as to justify the court in hearing parol testimony to determine the intention of the parties to the contract. In the light of this evidence and the rules of law above announced, we are convinced that the trial court correctly construed the contract. Under the first paragraph of the letter there can be no doubt that the appellant, for the price named therein, agreed to furnish the

kitchen and mess-hall equipment as per specifications of
the supervising architect listed under items 780 to 821,
inclusive.   Item 780 called for the kitchen equipment,
and under the title, "Scope of the work," specified that
*"the equipment is to be furnished complete in every
detail and installed in the kitchen and mess-hall build-
ing."*   The first paragraph of the letter, or contract,
therefore, should read as though item 780 were a part of
that paragraph, and, when so read, it in effect declares
that, for the price therein named, the appellant will
furnish the equipment complete in every detail and
*install same in the kitchen and mess-hall building,* and,
when the equipment is delivered to the kitchen and mess-
hall at Fort Logan H. Roots, fifty per cent. of the con-
tract price is to be paid, and when the equipment is set
in place, forty per cent. more is to be paid, and the bal-
ance of ten per cent. is to be paid when the government
has inspected and accepted the work done under the
contract.   When the first paragraph of the letter is read
in this manner, as it must be, there is no ambiguity in
the meaning of the contract, and it clearly contemplates,
not only that the kitchen and mess-hall equipment was to
be delivered at said kitchen and mess-hall at Fort Logan
H. Roots, but also that same was to *be set in place and
installed.*

Now, the word "install," in builders' terminology,
according to the undisputed evidence, means "to set in
place, to connect up, and fix ready for use."   Therefore
if the first paragraph of the letter were the whole con-
tract, there would be no ambiguity whatsoever about it,
and, under it, the appellant would be bound to deliver
and install the equipment—that is, to set the same in
place, connect it up, and fix it ready for use.

But appellant's agent, who prepared the contract and
conducted the negotiations for the appellant, testified that
he knew the meaning of the word "install," and that, in
writing the contract, he had the specifications before him,
and that appellant did not mean to install the equipment,
but only to set the same in place, and that such is the

meaning of the contract when the first paragraph is considered in connection with the subsequent paragraphs. Appellant contends that the second paragraph of the contract, in which appellant says its offer does not include plumbing, gas-fitting or electrical work other than that which is a part of the specified equipment, and that each piece of equipment was to be set in place and position as designated by the blue-print submitted with the specifications by the architect, shows that it was the intention of the appellant only to set the equipment in place, but not to do the plumbing, gas-fitting or electrical work necessary to connect the same and fix it ready for use; in other words, that the contract does not bind the appellant to install the equipment ready for use, but only to deliver same and set it in place.

We cannot concur in this view of the contract. If such be the meaning of the paragraphs of the contract subsequent to the first paragraph, they are in conflict with the meaning clearly expressed in the first paragraph. It occurs to us that the subsequent paragraphs of the contract can be and should be construed as harmonizing with the meaning as clearly expressed in the first paragraph. When so construed, the second paragraph includes such plumbing, gas-fitting and electrical work as was necessary to install the specified equipment. Undoubtedly, the blue-print furnished by the supervising architect of the government would show a fully installed job —that is, with the equipment delivered, set in place, connected up, and ready for use. Otherwise the work when inspected would not have been accepted by the government. The contract specified that ten per cent. of the contract price might be held out by the appellee until the government inspected and accepted the work, which tends to show that the appellant contemplated that the equipment was to be installed by it according to the meaning of that term as set forth in the record.

The concluding paragraph of the letter, in which the appellant assures the appellee of its desire to give the latter "good service and equipment," tends to prove

that the appellant was not only to furnish the equipment, but also the service necessary for its installation. Certainly, the contract, when taken as a whole, is susceptible of the meaning which the trial court gave it, and if it can be said, from the language of the contract as a whole, that such meaning is doubtful, the doubt must be resolved in favor of the appellee and against the appellant.

The judgment of the trial court is correct, and it is therefore affirmed.