**UNITED STATES for Use and Benefit of COMMERCIAL EQUIPMENT CO., Inc.**

v.

**WOOTEN et al.**

No. 572.

United States District Court
W. D. Arkansas. Hot Springs.
May 7, 1954.

Bethell & Pearce, Fort Smith, Ark., for plaintiff.

J. Phillip Carroll, of the firm Rose, Meek, House, Barron & Nash, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

In this suit Commercial Equipment Company Inc., hereinafter often referred to as plaintiff, seeks judgment against the defendant, R. K. Wooten, d/b/a Wooten Construction Company, and said defendant's surety, Maryland Casualty Company, for an alleged balance of $800 due to plaintiff by Wooten for work done pursuant to a subcontract between Wooten and plaintiff under the terms of which plaintiff contracted to do a portion of the work Wooten, as prime contractor, had contracted to do for the Government in improving the mess facilities on the third floor of Building No. 1, Army and Navy Hospital in Hot Springs, Arkansas.

Defendants admit the failure to pay $800, but allege that the defendant Wooten is entitled to a credit of $800 for liquidated damages he was required to pay the Government as a result of plaintiff's delay in performance of the work. While not denominated as such, defendant's claim for a credit is in fact a counterclaim, and the only issue before the Court is whether the defendant Wooten is entitled to recover from plaintiff in the nature of a set-off the sum of $800 for liquidated damages.

The case was tried to the Court, without a jury, on April 12, 1954, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs of the parties in support of their respective contentions. The briefs have been received, and now the Court, having considered the pleadings, ore tenus testimony of the witnesses, the deposition of Colonel Joseph S. Grygiel, stipulations, exhibits, and briefs, makes and files herein its findings of fact and conclusions of law, separately stated.

Findings of Fact

1.

The plaintiff, Commercial Equipment Company, Inc., is a corporation organized and existing under the laws of the State of Arkansas, having its principal office and place of business in Fort Smith, Arkansas. The defendant, R. K. Wooten, doing business as Wooten Construction Company, is a citizen and resident of Little Rock, Arkansas. The defendant, Maryland Casualty Company, is a Maryland Corporation authorized to do business in the State of Arkansas.

The contract sued upon was executed and to be performed in the Western District of Arkansas, Hot Springs Division; the complaint herein was filed on January 13, 1954, and summons served upon defendants on January 14, 1954; and the final settlement on the contract in question occurred less than one year prior to the commencement of this suit.

2.

On June 23, 1952, defendant Wooten entered into a contract with the United States to improve the mess facilities on the third floor of Building No. 1, Army and Navy Hospital in Hot Springs, Arkansas. The contract was subject to the approval of the Commanding General, Fourth Army Headquarters, or his authorized representative, and was approved on July 10, 1952, at which time Wooten was given "Notice to Proceed" with the work.

As required by the contract, Wooten obtained and filed a payment bond in the principal amount of $56,556.56 with the defendant, Maryland Casualty Company, as surety, to secure prompt payment to all persons supplying labor and material in the prosecution of the work covered by the contract.

### 3.

The contract between Wooten and the United States provided that "The work shall be commenced within ten (10) calendar days after receipt of Notice to Proceed and shall be completed within one hundred five (105) calendar days after date of receipt of Notice to Proceed." Paragraph SC–12(b) of the Specifications provided that:

"In order that the General Mess may be out of use the minimum length of time, the contractor will not be allowed to start any actual construction in the Main Hospital Building until he furnishes evidence, satisfactory to the contracting officer, that he has all the necessary materials and equipment on hand and available to complete the project. In no case will the contractor be allowed to start any actual construction in the Main Hospital Building any earlier than 75 calendar days prior to the contract completion date."

Notwithstanding the provisions of Paragraph SC–12(b), the Government's Contracting Officer and Post Engineer, Lieutenant Colonel Joseph S. Grygiel, with full knowledge that there were not available and on hand the necessary materials and equipment to complete the project, on July 10, 1952, gave Wooten "Notice to Proceed" with the work. Likewise, Wooten, with full knowledge that said materials and equipment were not on hand, accepted said Notice to Proceed and thereafter began work on the project.

On July 18, 1952, defendant Wooten and plaintiff entered into a subcontract whereby plaintiff agreed to perform a part of Wooten's contract with the United States. Construction on the Main Hospital Building was begun on August 13, 1952, and at that time the necessary materials and equipment were still not on hand. In fact, due to Government restrictions on the use of nickel bearing steel—the type specified in the general contract—it was necessary to secure the acceptance of a different type of steel for use in the work to be done by plaintiff, and such acceptance as to some of the equipment was not obtained until October 17, 1952. Thus, on October 17, ninety-nine days after Notice to Proceed was given, the necessary materials and equipment were not on hand, and in view of the fact that a substantial portion of the materials and equipment were to be custom fabricated, there was no likelihood of said materials and equipment being on hand for at least several weeks. It is quite evident, therefore, that the entire time for completion of the whole project (105 days) had elapsed prior to the time the necessary materials and equipment were on hand to complete the project.

Some additional delay was caused by the Government's failure to provide certain equipment and necessary dimensions, and as a resultant factor of that delay, coupled with the delay caused by the beginning of the work before the necessary materials and equipment were on hand, the project was not completed until February 20, 1953, a total of 225 days after Notice to Proceed was given.[1]

Extensions of time were granted by the Government to Wooten, the first modification extending the completion date to November 13, 1952 (because of the Government's failure to provide equipment and dimensions), and the second modification extending the completion date to include all the time actually

---

[1]. Col. Grygiel testified that the work was completed in 223 days, but, unless the Court has erred in its mathematical calculation, the period of time between July 10, 1952, and February 20, 1953, is 225 days. In any event, however, the total number of days is immaterial.

consumed except eight days. The latter extension was made July 29, 1953, approximately five months after the work was accepted, and as a result thereof Wooten was relieved of any claim for liquidated damages except for the eight days above mentioned, the total liquidated damages thus being $800.

### 4.

After the use of 430 steel was approved, plaintiff ordered the necessary items which were to be installed in the General Mess. On January 15, 1953, plaintiff's manager wrote to Wooten advising that "Items Nos. 8, 9 and 11, Cafeteria Counter" were being shipped to Hot Springs, and that "As per our previous advices our crew stands ready to start the installation of this equipment when it arrives in Hot Springs." The cafeteria counter was delivered to the General Mess on Friday, January 23, 1953, and plaintiff immediately dispatched two men from Fort Smith to Hot Springs to set the counter in place. These men arrived at the Mess at 2:00 p. m. that day and worked the remainder of Friday and all day Saturday setting the counter in place. Plaintiff's employees returned to Fort Smith Saturday night, and during the eight day period from January 25 to February 1, inclusive, no employees of plaintiff were actually engaged in the installation work on the premises of the General Mess. It is for these eight days that the Government charged Wooten liquidated damages, the reason being that certain items of kitchen equipment were on hand, including the cafeteria counter, that no one was working on the installation of said items, and that in the opinion of the Engineers work could have been done during this time.

However, plaintiff was far from idle during these eight days. The cafeteria counter had been damaged in shipment and some of the doors were taken to Fort Smith and were being repaired during this period. Also, due to the unexpected damage to the counter and the change in type of steel used, it was necessary for Mr. Scamardo, plaintiff's installation specialist, to go to Saint Louis to obtain from Food Equipment Corporation, the fabricator of the kitchen equipment, the necessary grits, wheels, and other tools and equipment to repair the damaged counter. This was done during the eight day period in question, and on Monday, February 2, Scamardo took his installation crew to Hot Springs and began work on the actual installation of the kitchen equipment. All parties agree that on and after February 2, the work "progressed very nicely", the work being accepted by the Government on February 20, 1953.

The cafeteria counter was shipped in several pieces, as were other items of kitchen equipment, and the work of installing said equipment was performed by two of plaintiff's crews. The first crew would place the equipment in the general location. When that was done the second or technical crew would fit the equipment, weld the necessary pieces together, do the required riveting, repair any damaged pieces, and repolish all the equipment. This work, of course, required highly developed skill on the part of the technical crew. It was both uneconomical and impractical to begin the second or technical phase of the work unless a substantial part of the kitchen equipment was on hand, and this factor, when considered along with the work that was actually done by plaintiff's employees during the eight day period, convinces the Court that plaintiff was guilty of no unnecessary delay in said eight day period. Moreover, in view of the fact that some of the necessary kitchen equipment did not arrive at the General Mess until after February 2, and of course could not have been installed prior to the time it arrived, it is difficult to perceive any possible delay in the final completion date of the project that could have been caused by the failure of plaintiff to have employees on the premises of the General Mess during the eight day period.

### 5.

The contract entered into between plaintiff and Wooten is entitled "The

Standard Form of Subcontract" and was dated July 18, 1952. The contract contains the following provisions:

"Section 1. The Subcontractor agrees to furnish all material and perform all work as described in Section 2 hereof for (Here name the kind of building.) *Improvement of Mess Hall, Third Floor, Bldg. #1* for ('Here insert the name of the Owner.) *Army & Navy Hospital,* hereinafter called the Owner, at (Here insert the location of the work.) *Hot Springs, Arkansas* in accordance with the General Conditions of the Contract between the Owner and the Contractor and in accordance with the Drawings and Specifications prepared by *The Post Engineers* hereinafter called the Architect, all of which General Conditions, Drawings and Specifications signed by the parties thereto or identified by the Architect, form a part of a Contract between the Contractor and the Owner dated, *July 10, 1952,* and hereby become a part of this Contract.

"Section 2. The Subcontractor and the Contractor agree that the materials to be furnished and work to be done by the Subcontractor are (Here insert a precise description of the work, preferably by reference to the numbers of the Drawings and the pages of the Specifications.) *Deliver to site and set in place all items on Drawing No. PE–541: and Modification No. 1, of the Plans and Specifications, Items No. 1, 2, 3, 8, 9, 11, 12, 16, 15, 23, 33, 35, 36, 43, 45. The attached Modification No. 1, of the Plans & Specifications is included in this contract.*

"Section 3. The Subcontractor agrees to complete the several portions and the whole of the work herein sublet by the time or times following:

(Here insert the date or dates and if there be liquidated damages state them.)

———— *days after receipt of written notice to commence work.*

"Section 4. The Contractor agrees to pay the Subcontractor for the performance of his work the sum of *Twenty Four Thousand Five Hundred Fifty three and no/100 ($24,-533.00)* in current funds, subject to additions and deductions for changes as may be agreed upon, and to make payments on account thereof in accordance with Section 5 hereof.

"Section 5. The Contractor and Subcontractor agree to be bound by the terms of the Agreement, the General Conditions, Drawings and Specifications as far as applicable to this subcontract, and also by the following provisions:

"The Subcontractor agrees—

"(a) To be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.

"(b) * * *

"(c) To make all claims for extras, for extensions of time and for damages for delays or otherwise, to the Contractor in the manner provided in the General Conditions for like claims by the Contractor upon the Owner, except that the time for making claims for extra cost is one week.

"The Contractor agrees—

"(d) To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof affording remedies and redress to the Contractor from the Owner.

"(e) * * *

"(g) To pay the Subcontractor to such extent as may be provided by the Contract Documents or the sub-

contract, if either of these provides for earlier or larger payments than the above.

"(h) * * *

"(k) To make no demand for liquidated damages or penalty for delay in any sum in excess of such amount as may be specifically named in the subcontract.

"(1) * * *

"(m) To give the Subcontractor an opportunity to be present and submit evidence in any arbitration involving his rights. * * *."

(The italicized portions of the above provisions were typewritten in the Subcontract; the other portions of the Subcontract were printed upon the Standard Subcontract Form.)

This subcontract was prepared by one of Wooten's employees, sent to plaintiff for signature, and then returned to Wooten. Apparently, neither of the parties ever discussed the question of liquidated damages prior to executing the subcontract, but subsequently Wooten informed plaintiff that in his opinion plaintiff would be liable to him for liquidated damages under the terms of the General Contract as incorporated into the Subcontract. Paragraph SC–12(a) of the Specifications provided:

"Liquidated Damages: a. In case of failure on the part of the contractor to complete the work within the time limit fixed in the contract, or an extension thereof, the contractor shall pay the Government as liquidated damages the sum of $100 for each calendar day of delay until all of the work to be performed as a part of the contract has been completed and accepted."

On October 20, 1952, Wooten wrote plaintiff stating: "We regret that we cannot withdraw the letter which we recently wrote to you concerning damages which might be sustained by reason of your delay. It is true that there is no provision in the contract specifying your date of completion but you would, we believe, be required to complete within a reasonable time and we feel that you would be responsible for failure to do so. * * *."

### Discussion

Plaintiff contends that (1) as a matter of law defendant Wooten is precluded from recovering liquidated damages from it, and (2) in any event plaintiff was not guilty of any delay during the eight day period in question. Contrarily defendants contend that (1) the provision for liquidated damages contained in the Specifications is applicable to plaintiff under the subcontract, and (2) plaintiff delayed the work during the eight day period and is liable to defendant Wooten for liquidated damages.

The parties have filed excellent briefs supporting their respective contentions, and have called to the Court's attention certain well established rules governing the construction of contracts.

Plaintiff advances several rules of construction as having possible application in the instant case. Where the language of a contract is free from ambiguity it must be construed by the Court according to its obvious meaning. Nakdimen v. Brazil, 131 Ark. 144, 150, 198 S.W. 524; Coffelt v. Decatur School District No. 17, 212 Ark. 743, 208 S.W.2d 1. The contract is to be considered as a whole. United States for Use and Benefit of Lichter v. Henke Const. Co., D.C.Mo., 67 F.Supp. 123, affirmed, 8 Cir., 157 F.2d 13; Fowler v. Unionaid Life Insurance Co., 180 Ark. 140, 20 S.W.2d 611. Clauses in a contract dealing specifically with a particular subject matter prevail over general clauses which might, in the absence of the specific clause, lead to another construction. English v. Shelby, 116 Ark. 212, 218, 172 S.W. 817; Witherspoon v. Lumbermen's Mutual Ins. Co., 211 Ark. 844, 203 S.W.2d 185; Mutual Reserve Fund Life Association v. Minehart, 72 Ark. 630, 83 S.W. 323. And, any doubt as to the meaning or construction of a contract should be resolved against the party who prepared the contract. Bracey Brothers Hardware Co. v. Herman-McCain Construction Co., 163 Ark. 133, 259

S.W. 384; Lee Wilson & Co. v. Fleming, 203 Ark. 417, 156 S.W.2d 893.

Defendants, while finding "little fault" with the principles of contract construction urged by plaintiff, contend that some or all of them are inapplicable in the instant case, and set forth additional rules of construction which they deem more pertinent. In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are legally one instrument and will be read and construed together. W. T. Rawleigh Co. v. Wilkes, 197 Ark. 6, 121 S.W.2d 886; Gowen v. Sullins, 212 Ark. 824, 208 S.W.2d 450. To determine the intention of the parties to a contract, the Court may acquaint itself with the persons and circumstances and place itself in the same situation as the parties who made the contract. American Snuff Company v. Stuckey, 197 Ark. 540, 123 S.W.2d 1063; Blair v. U. S., for Use and Benefit of Gregory-Hogan, 8 Cir., 147 F.2d 840, modified, 8 Cir., 150 F.2d 676. The governing factor is the intention of the parties, and such intention may be shown by the circumstances surrounding the making of the contract, the situation and relationship of the parties, and the sense in which, taking these things into consideration, the words would naturally be understood. And, as between two constructions, each reasonable, one of which will make the contract enforceable, and the other which will make it unenforceable, that construction which makes the contract enforceable will be preferred. Hastings Industrial Co. v. Copeland, 114 Ark. 415, 169 S.W. 1185; Scrinopskie v. Meidert, 213 Ark. 336, 210 S.W.2d 281. Finally, where words are omitted by inadvertence from a written contract they may be supplied by construction at law, without resort to reformation, if the context shows what words are omitted. Irwin v. Nichols, 87 Ark. 97, 112 S.W. 209.

■ The principles advanced by the parties are fair general statements of the law governing construction of con-

tracts, and to them the Court desires to add only one rule, i. e., " 'The purpose of all interpretation is to ascertain and give effect to the intention of the parties to the contract *as expressed by their writing,* and in doing this it is necessary to consider the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into consideration, the words used would be commonly understood' ". (Emphasis added.) Fulk v. Gay, Trustee, 216 Ark. 462, 473, 226 S.W.2d 69, 75. Thus, the duty of the Court in this case is to read and examine the contract between the parties, and determine their intention as expressed in said contract.

■ In the last analysis, the crucial question with reference to the effect of the Subcontract is whether the word "subcontract" as used in Section 5(k) of the contract between Wooten and plaintiff refers merely to said subcontract or includes also the Agreement, General Conditions, Drawings and Specifications of the contract between Wooten and the Government. Section 5(k) provides that the Contractor agrees "To make no demand for liquidated damages or penalty for delay in any sum in excess of such amount as may be specifically named in the subcontract." The Court is convinced that the term "subcontract" as used in Section 5(k) refers solely to the subcontract agreement between plaintiff and Wooten and does not include the contract between Wooten and the Government. Several factors inevitably lead the Court to this conclusion. First, in Section 3 of the Subcontract a specific place is provided for the statement of liquidated damages, if they are to be included in the Subcontract, and this is clearly the place referred to in Section 5(k) where liquidated damages are to "be specifically named in the subcontract," if the contractor desires to claim liquidated damages.

Second, where it is desired in the Subcontract to refer to documents other than the Subcontract itself, said documents are designated by names other than "sub-

contract." For example, in Section 5(g) of the Subcontract it is provided that the Contractor agrees "To pay the Subcontractor to such extent as may be provided by the Contract Documents or the subcontract, if either of these provides for earlier or larger payments than the above." In this section the Agreement, General Conditions, Drawings and Specifications are referred to as the "Contract Documents" as distinguished from the "subcontract," and no doubt the same terminology would have been used in Section 5(k) if the intention had been to permit recovery of liquidated damages although not provided for in Section 3 of the Subcontract. In other words, Section 5(k) would have prohibited demand by the contractor "for liquidated damages or penalty for delay in any sum in excess of such amount as may be specifically named *in the Contract Documents or* in the subcontract."

Third, the Subcontract is a Standard Form of Subcontract and is designed for use by various types of subcontractors. In many cases the work to be done by a particular subcontractor must be done within a short time, much shorter than the time permitted for the whole project, and that is the precise reason for having Section 3 in the Subcontract, i. e., to provide a place for stating the time allowed the subcontractor to do his work and the liquidated damages, if any, for delay by the subcontractor in performing his work. And the failure to provide for liquidated damages in Section 3 precludes a contractor, under Section 5(k), from claiming liquidated damages from the subcontractor.

██ Defendants contend that Section 5(a) of the Subcontract governs, and that plaintiff was bound to defendant Wooten "by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner." Defendants follow this contention with the argument that the blank spaces found in Section 3 of the Subcontract "evidenced only an unaccepted op-

portunity to repeat the provisions relating to liquidated damages and time limitation that are found elsewhere in the subcontract." Defendants cite and rely upon the cases of N. E. D. Holding Co. v. McKinley, 246 N.Y. 40, 157 N.E. 923, and Starr v. Holck, 318 Mich. 452, 28 N.W.2d 289, 172 A.L.R. 413, as supporting the principle that blanks which are not filled in may be rejected as surplusage if the parties so intended. The inapplicability of that principle in the instant case is readily apparent. Here, not only was there an express caveat in Section 3 of the Subcontract directing the parties that "if there be liquidated damages state them," but there was also a specific agreement by the Contractor (Wooten) under Section 5(k) "To make no demand for liquidated damages or penalty for delay in any sum in excess of such amount as may be specifically named in the subcontract." Certainly, if there were any inconsistency between Section 5(a) and Section 5(k) of the Subcontract, the latter section, dealing specifically with the subject matter of liquidated damages, would prevail over Section 5 (a) which is merely a general clause incorporating into the Subcontract certain portions of the General Contract. See, English v. Shelby, supra; Mutual Reserve Fund Life Association v. Minehart, supra; Witherspoon v. Lumbermen's Mutual Ins. Co., supra. A careful study of the Subcontract reveals, however, that there is no actual inconsistency between the two Sections. By its terms Section 5 purports to bind the parties "by the terms of the Agreement, the General Conditions, Drawings and Specifications *as far as applicable to this subcontract."* (Emphasis added.) And, the provision for liquidated damages found in the Specifications is not "applicable to this subcontract" since Section 5(k) of the Subcontract categorically abolishes any claim for liquidated damages "in excess of such amount as may be specifically named in the subcontract."

The precarious position of defendants' contention is demonstrated by Wooten's own construction of the Subcontract.

In Wooten's letter of October 20, 1952, to plaintiff he stated: "It is true that there is no provision in the contract specifying your date of completion but you would, we believe, be required to complete within a reasonable time and we feel that you would be responsible for failure to do so." If, as defendants contend, Paragraph SC–12(a) of the Specifications (liquidated damages) is incorporated into the Subcontract, likewise Paragraph SC–1 of the Specifications (setting time for completion of the work at 105 days) would be incorporated into the Subcontract and binding upon the plaintiff. But defendant Wooten, while apparently recognizing that plaintiff is not bound by the time limit stated in Paragraph SC–1, nevertheless contends that plaintiff is bound by the liquidated damages provision of Paragraph SC–12(a). The repugnancy of these positions is clear and casts considerable discredit upon defendant's theory. Of course, the Court is aware of the fact that Wooten's statement in the letter was merely his opinion as to the proper construction of the contract, and has no legal effect upon the contract itself. Nevertheless, this inconsistency is indicative of the tenuous position in which the defendants find themselves and lends further support to plaintiff's contention that the Subcontract is clear and unambiguous and must be construed by the Court according to its obvious meaning. Nakdimen v. Brazil, supra; Coffelt v. Decatur School District No. 17, supra.

 Of course, it is possible, and in fact probable, that Wooten intended to include in the Subcontract a provision for liquidated damages, but he failed to do so and the Court is not free to make a contract for the parties. Suffice it to say that the Court is of the opinion that the Subcontract is unambiguous and the obvious meaning of said Subcontract is that Wooten was and is precluded from making a claim against plaintiff for liquidated damages since such damages were not provided for in the Subcontract. Therefore, regardless of whether or not plaintiff actually delayed the project, defendants are not entitled to recover anything, by way of set-off or otherwise, of and from plaintiff by reason of their counterclaim.

 Moreover, the Court is convinced that in any event plaintiff was guilty of no actual delay in the performance of its work. As stated in the findings of fact, the real cause of the delay was the action of defendant Wooten and the Government Engineers in beginning the project prior to the time the necessary materials and equipment were on hand, and defendants cannot pass on to plaintiff damages caused by its own action, along with the action of the Government Engineers. See, United States, for Use of Gillioz v. John Kerns Const. Co., 8 Cir., 140 F.2d 792, 152 A.L.R. 1349–1392. Furthermore, plaintiff was actually working during the eight days in question and there is no basis upon which liquidated damages could be charged against it by defendant Wooten. It follows that defendants would not be entitled to prevail upon their counterclaim even if the Subcontract were construed to provide for liquidated damages.

### Conclusions of Law

#### 1.

The Court has jurisdiction of the parties to and the subject matter of this cause of action. 40 U.S.C.A. § 270b, Miller Act, § 2.

#### 2.

Plaintiff, United States, is entitled to recover of and from the defendants, R. K. Wooten, d/b/a Wooten Construction Company, and Maryland Casualty Company, the sum of $800.00 for the use and benefit of Commercial Equipment Company, Inc., a Corporation.

#### 3.

Defendants are entitled to recover nothing of and from Commercial Equipment Company by reason of their counterclaim, and said counterclaim should be dismissed.

A judgment in accordance with the above should be entered.