Jackson County Gin Company *v*. McQuistion.

Opinion delivered April 30, 1928.

*Pickens & Ridley,* for appellant.

*Appellee pro se.*

MEHAFFY, J. The appellee began suit in the justice of the peace court in Jackson County, Arkansas, on a contract, alleging that the appellant had agreed to sell him 50 bales of cotton, and that appellant had breached the contract and damaged him in the sum of $118.15. The case was tried in justice court, and appealed to the circuit court, where it was tried, and the jury returned a verdict for the appellee for $118.15. Appellant filed its motion for a new trial, which was overruled, exceptions saved, and it prosecutes this appeal to reverse said judgment.

The plaintiff testified that he made a contract with the defendant to buy 50 bales of cotton, and that the following is a confirmation of the contract:

"CONFIRMATION OF SALE
Sign and return at once.

"Newport, Ark., 10-30-26.

"R. P. McQuistion,
"Newport, Arkansas.

"For account of H. C. McGown & Co.

"We hereby confirm the sale of 50 bales of merchantable cotton to you at 12.26 cents per pound, basis ........................, delivery to be made within ten days, and weights guaranteed to be correct upon delivery to you at the compress at Newport. Compress weights to govern.

"Jackson County Gin Co.

"By James.

"Description of cotton: St. low 1 1-16—1.25 off; 1.50 off; St. good ord. 8c; good ord. 7½c; low mid. 101 16-300 off; low mid. 1, 350 off."

Indorsed on back in pencil: "Market day be bought."

Plaintiff further testified that the basis for middling on the day of the contract was 12.26; that the defendant delivered 33 bales within ten days under this contract. Plaintiff had sold the cotton to H. C. McGown & Company and delivered to them 33 bales, but could not get any more to deliver of the color and quality at that time

of year. It had been raining, and the cotton had reduced in grade and color.

Appellee had been in the cotton business 22 years. The defendant tendered him 17 bales of cotton in January, 1927, and there were 4 bales that were up, and the rest of it was too low. Witness sent the cotton to Memphis to H. C. McGown & Company, and the Memphis firm declined to accept the cotton. It was off color, and had shale in it, some snaps, and roughly picked. A blue color made a difference in price of one cent a pound. Witness had Tom Hutson to class the cotton.

There was conflict in the testimony as to whether the cotton was the grade specified in the contract, and it would serve no useful purpose to set out the entire testimony. The testimony of appellant tended to show that the cotton sent to appellee was the kind specified in the contract.

The appellant requested the court to instruct a verdict in its favor, which the court refused, and the court thereupon instructed the jury as follows:

"Instruction No. 1. This is an action by the plaintiff, R. P. McQuistion, against the Jackson County Gin Company, in which McQuistion seeks to recover the sum of $118.15, which he alleges he is entitled to, due to the failure of the defendant to comply with a certain contract whereby they had agreed to sell and deliver to him fifty bales of cotton. The first question, gentlemen, for you to determine is whether or not the cotton, the seventeen bales of cotton tendered by the Jackson County Gin Company, complied with the class and grades called for in the contract which has been introduced as evidence in the case.

"Instruction No. 2. The burden is on the plaintiff, McQuistion, to show by a preponderance of the testimony that the defendant, Jackson County Gin Company, failed to deliver and tender to him seventeen bales of cotton of the grades and color called for in the contract of purchase.

"Instruction No. 3. Now, if you believe from a preponderance of the testimony that the defendant, Jackson County Gin Company, failed to tender and deliver to the plaintiff, R. P. McQuistion, seventeen bales of cotton of the grade standard called for in the contract of purchase entered into with the plaintiff on the date mentioned in the contract, then your verdict should be for the plaintiff for the amount sued for, or $118.15; and, unless you so believe, your verdict should be for the defendant."

Instruction No. 4 was an instruction to the jury about the credibility of witnesses and weight to be given to their testimony, and instruction No. 5 directed them as to the form of their verdict.

None of the instructions were objected to by appellant except No. 3.

Appellant's first contention is that the verdict of the jury was not responsive to the law given by the court and the evidence introduced in the case. It is insisted that the suit was upon a written contract for the sale of 50 bales of cotton, and Tom Hutson, who classified it, classified it as strict good ordinary and good ordinary cotton. And appellant insists that there was nothing said in the written contract about color, and for that reason the contract could not have been construed to mean that the cotton should be white, unless the same had been specified in the contract; that the cotton was up to the grade and standard specified in the written contract; and it is argued that that contract could not be changed by the introduction of oral testimony, and that it was error to admit testimony as to the color of the cotton, or to admit any oral testimony about the cotton.

Even if the contract was entered into as alleged, and appellant breached the contract, it would of course be liable in damages for a breach of the contract. And there seems to be no serious controversy about the amount of damages. The appellee testified that he bought the cotton himself and sold it to the Memphis concern, and that he was damaged $118.15. If appellant is correct, and the testimony as to the color and grade of cotton was inadmis-

sible, a verdict should have been directed for appellant. It is a matter of common knowledge that the price of cotton is affected by its color, and that cotton that has been colored or stained or damaged in that way will not sell for the same price that white cotton would. And, while it is a general rule that parol evidence is not admissible to vary or contradict the terms of a written contract, it is admissible to show the intention of the parties, and the terms of a written contract are not contradicted or varied by showing the real intention of the parties. *Davis v. Reynolds*, 154 Ark. 101, 241 S. W. 379.

The parol testimony introduced in this case does not violate the rule making parol evidence inadmissible to vary or contradict the terms of a written contract. The contract in this case provided for a certain grade of cotton. The testimony on the part of the appellee shows that the cotton offered did not measure up to this grade, and that, when cotton was sold as this cotton was, it was understood between buyer and seller that it should be of certain quality, and that both parties understood this contract to mean that the cotton should not be off color, and that this was the intention of the parties. While parol evidence is not admissible to vary the terms of a written contract, it is admissible to show what the parties intended to express by the language adopted.

"Parol evidence is admissible to show a general and uniform custom or usage in the trade or business to which a contract relates, at the place where it was made or is to be performed, in those cases where the instrument is silent, or the terms and language employed are of doubtful import, or where such evidence is essential in order to give effect to the writing. * * * Where a word or phrase has, by reason of a custom or usage, a particular or technical meaning in a particular neighborhood or locality, and is used in an instrument made at that place or in that locality, the meaning of such word or term may be shown by parol evidence. And to authorize the admission of such evidence it is not necessary that the custom or usage should have existed for any considerable length

of time, it being sufficient if known to the parties at the time they entered into the contract." Enc. of Ev., vol. 9, 360.

It is true that, where a contract is in writing, clear and unambiguous upon its face, and purports to contain the complete agreement of the parties, parol evidence is not admissible to show that the actual or secret intent of the parties was different from that expressed in the writing. Parol evidence cannot be introduced to vary or contradict the written contract. But this rule, like all other rules, has exceptions.

"The general rule that parol evidence is not admissible to contradict or vary the terms of a written contract is neither invariable nor inflexible, but adapts itself to the manifold and shifting exigencies of human affairs. * * * The law takes into consideration the fact that most agreements are drawn up by unskilled persons, ignorant of the legal rules of construction, who very frequently do not embody the entire agreement, or else express it vaguely or ambiguously; and the fact that, even where agreements are drawn up by legal experts, the same faults and defects are attributable, sometimes from insufficient instructions from the client, sometimes from error of the counsel himself. A great deal of judicial leniency should be and is extended to uninstructed persons, where experience has demonstrated that some of the wisest lawyers who have ever lived have not known enough law to draw their own wills. * * * The body of the exceptional law that has thus sprung up is much larger than that of the corroborative law." Browne on Parol Evidence, 2.

The original contract in this case was oral, and what the parties now refer to as the contract was a confirmation of the oral contract, and is incomplete, and evidently does not undertake to set out the complete contract. It would hardly be contended that it would be a compliance with the contract to send blue cotton or cotton that was damaged in any other way, although the contract itself says nothing whatever about color.

It is insisted that the court erred in permitting the plaintiff to introduce in evidence Exhibit E. Exhibit E was a receipt given the appellee by H. V. McGown & Company, showing the amount of money paid by the appellee on account of the breach of his contract. This receipt was not admissible in evidence, but it could not have been prejudicial, because the undisputed testimony showed that the appellee paid the Memphis concern the amount for which the receipt was given.

Appellant next contends that the court erred in refusing to instruct the jury to return a verdict for appellant. The testimony was conflicting, and it was not error to refuse this instruction. The court properly instructed the jury that they must determine from the evidence whether or not the 17 bales of cotton complied with the class and grades called for in the contract, and that the burden was on the appellee to show by a preponderance of the testimony that the appellant failed to deliver and tender to him 17 bales of cotton of the grades and color called for in the contract.

The weight of the testimony and credibility of witnesses were questions for the jury, and their finding is conclusive here, there being substantial evidence to support the verdict.

We find no prejudicial error, and the case is therefore affirmed.