LEE WILSON & COMPANY *v.* FLEMING.

4-6533                                          156 S. W. 2d 893

Opinion delivered December 22, 1941.

*Daggett & Daggett,* for appellant.

*Marvin B. Norfleet,* for appellee.

HOLT, J.   September 2, 1940, appellants sued appellee, S. C. Fleming, in the St. Francis circuit court.

They alleged in their complaint that on April 6, 1939, the company, through J. H. Crain, trustee, entered into a written farm rent contract with F. J. Allen, whereby certain farm land owned by the company in Mississippi, was rented to Allen for the year 1939 for $1,750, evidenced by a rent note due November 15, 1939. The contract and note were made a part of the complaint.

It is further alleged that in addition to the covenants contained in the rent contract, lessors agreed to furnish the lessee, Allen, certain tractors and personal property for use in 1939, for which Allen agreed to pay additional rental of $700. Security for payment of the rent note and the $700 item was the retention of a landlord's lien upon all crops produced on the land.

It was further alleged that sometime in November, 1939, appellee, S. C. Fleming, "with full knowledge of the ownership of said land by plaintiffs, and their right to the use and possession of same, and with full knowledge of plaintiffs' lien for rent and supplies upon all the crops produced on said land during the year 1939 by the said Allen, knowingly, willfully and tortiously, by his acts and through his agents and employees, removed all of the crops on said land off the same, removing the same from the State of Mississippi into the State of Arkansas, converting same to his own use, and disposing of same to his benefit and to the exclusion of all rights plaintiffs had in said crops." Judgment was sought for the amount of the liens with interest from November 15, 1939.

The answer of Fleming denied the material allegations and further alleged that during the year 1939 he furnished appellants' lessee, Allen, the amount of $935.05 for the production and harvesting of the crops grown on the land by Allen, relying "upon the express and written waiver of plaintiffs' lien for rent accruing under and because of the lease of said land to the said Allen as alleged in the complaint, said waiver appearing written therein, as follows, to-wit: "4. First party hereby agrees to waive his rent to any person, firm or corporation, for the purpose of allowing second party to

obtain furnish money, to the extent of One Thousand Five Hundred ($1,500) Dollars.''

Appellee further alleged that the only crops he received from the land described in the complaint were 2,019 1/10 bushels of ''ear corn'' of the value of fifty cents per bushel, and denied that he owed appellants anything.

Upon a jury trial, and at the close of all of the testimony, the court, upon motion of appellee, directed a verdict in his favor. This appeal followed.

Appellants present the issues here in this language: ''Does clause 4 of the contract constitute an executed waiver of plaintiffs' lien, or merely a promise to waive upon future demand?'' If, say appellants, the waiver be conceded, it was purely for Allen's benefit; appellee, Fleming, was a stranger to the contract; there was no privity of contract between Allen and Fleming and Fleming may not avail himself of this clause 4.

At the outset, it is conceded that the contract sued upon was executed in Arkansas, covering land in Mississippi, therefore, we must construe the contract under the laws of this State. In *Lawler* v. *Lawler,* 107 Ark. 70, 153 S. W. 1113, this court said: ''It is well settled in this State that the nature, validity and interpretation of contracts are to be governed by the law of the place where they are made, but the remedies, by the law of the forum.''

Our decision here turns upon the construction placed upon Clause 4, *supra,* of the contract in question. One of our long established, simple rules of construing contracts is stated in *Stoops* v. *Bank of Brinkley,* 146 Ark. 127, 225 S. W. 593, where it is said: ''The first rule of interpretation is to give to the language employed by the parties to a contract the meaning they intended. It is the duty of the court to do this from the language used where it is plain and unambiguous.''

Again in *Gates* v. *Ritchie,* 162 Ark. 484, 258 S. W. 397, this court said: ''There must be a meeting of minds in every contract, and the intention of the parties must be

gathered not by what they reserve, but by what they express.''

It is equally well settled that the language of a contract, if not doubtful, is conclusive as to the intention of the parties. *Love* v. *Couch,* 181 Ark. 994, 28 S. W. 2d 1067. Here appellants prepared the contract and it is to be construed most strongly against the party preparing it. This rule applies to rent contracts, such as we have in the present case. *Silbernagel & Company* v. *Taliaferro,* 186 Ark. 470, 53 S. W. 2d 999.

With these guiding principles, what did the lessors and lessee mean by the language used in clause 4, *supra?*

The language seems to us to be plain, clear and simple and expresses the intent of the parties at the time the contract was executed to be that appellants, lessors, were then and there waiving their landlord's lien to the amount of $1,500 in favor of any person, anywhere, who would furnish lessee, Allen, any part of this $1,500 so waived. The waiver was a present one. It was not conditioned upon a future demand by Allen. Appellants were not interested in the party from whom Allen might procure this ''furnish money'', but they were very much interested in Allen's getting it from somebody. Certainly appellants knew that Allen might need help in producing and harvesting his corn crop and this provision was to enable him to secure that help, which appellants, according to this record, had refused to advance to him. We think it would require a strained and technical interpretation to give to clause 4 the construction claimed by appellants that it is ''merely an agreement to waive upon future demand.''

We are also unable to agree with appellants' contention that appellee, Fleming, may not avail himself of clause 4, *supra,* there being no privity of contract between Allen and Fleming. In support of this contention appellants rely strongly upon the case of *Dickinson* v. *McCoppin,* 121 Ark. 414, 181 S. W. 151. It is our view, however, that that case does not control here. The principles announced by this court in the recent case of *Freer* v. *J. G. Putman Funeral Home, Inc.,* 195 Ark. 307,

111 S. W. 2d 463, wherein this court seems to take a more liberal view than that expressed in the Dickinson case, are applicable here. We said in the Freer case:

"While it is true the contract does not mention the name of the appellee as a third party to be benefited as it did other third parties in the preceding four paragraphs of the contract, yet the contract was intended for the benefit of a third party and not as a mere incident whereby some third party might be benefited. . . .

"We are confronted with the argument that formerly the courts held that there must have been some privity or obligation as between Finney and the appellee in order to bind appellant; that none being shown here the appellee is without remedy. We find that formerly under some more ancient authorities that proposition might have been deemed as well considered. We prefer, however, to take a different view, which we think is more consonant with absolute justice, as well as in conformity with the contract."

In the instant case, for whose direct benefit was clause 4 inserted in the rent contract? If it were in contemplation of the parties to benefit a third party, who turned out to be appellee, Fleming, then Fleming would be entitled to enforce the contract even though not mentioned therein. As we have indicated, appellant, first party, under clause 4 waived his rent in the amount of $1,500 to *any person*. Any person means any third party other than the second party, lessee, Allen, and therefore appellee, Fleming, had the right to enforce the contract according to its plain terms.

In view of the conclusions reached, it becomes unnecessary to consider other questions presented by appellants. On the whole case, finding no error, the judgment is affirmed.