Johnnie MYERS *v.* FIRST STATE BANK OF SHERWOOD

87-31                                                    732 S.W.2d 459

Supreme Court of Arkansas
Opinion delivered July 20, 1987
[Supplemental Opinion on Rehearing November 16, 1987.*]

---

*Hays and Glaze, JJ., dissent.

*Daggett, Van Dover, Donovan & Cahoon*, by: *Jesse B. Daggett*, for appellant.

*Gruber Law Office*, by: *Rita W. Gruber*, for appellee.

JACK HOLT, JR., Chief Justice. Johnnie Myers, appellant, argues that he should have been discharged from liability as a guarantor of notes held by First State Bank of Sherwood, appellee, to the extent that First State Bank unjustifiably impaired the collateral securing those notes. We disagree and affirm.

First State Bank (FSB), made several loans, evidence by promissory notes, to Mary Myers and Commercial Insurance Specialists, Inc. (CISI). Mary was the president of CISI, and Johnnie Myers, her father, was chairman of its board of directors. Johnnie was originally the sole incorporator of CISI. The articles of incorporation were later amended to include other incorporators, however, Johnnie retained shares of stock which were later transferred to Mary.

One of the promissory notes given by CISI provided FSB with a security interest in the furniture, fixtures and equipment of CISI. This note, as well as the other notes, contained provisions to the effect that the security interest given in the note will also secure all other obligations between the parties. Therefore, the security interest in the furniture, fixtures and equipment applied to all notes.

Johnnie was not a party to the individual notes, but he executed two continuing general guaranty agreements with FSB obligating him to pay "if they were not paid at maturity." When Mary was unable to continue making payments on the notes, FSB brought suit against Mary and CISI for the balance owing on the

notes. FSB also named Commercial American Insurance, Inc. as a defendant, alleging that Mary had sold CISI, and some or all of the collateral, to Commercial American and that FSB had the right to possession of the collateral.

Later, FSB amended its complaint to add as defendants Dorothy Myers, Johnnie Myers, Louise Abbott, James Levander, Marjorie Levander, and Anne Turner, stating Mary and CISI had sold some of the collateral subject to the security agreements between CISI and FSB to these parties, and claiming its right to immediate possession of the transferred collateral. In addition, FSB sued Johnnie Myers for the unpaid balance of the notes under the continuing guaranty agreements he executed in its favor. Johnnie in turn filed a cross-complaint against the Levanders, Turner and Commercial American, alleging fraud in the acquisition of the assets of CISI, which caused CISI and Mary to default on the notes, and resulted in his potential liability as a guarantor. Prior to trial, the court, upon oral motion by FSB, entered orders dismissing with prejudice FSB's claims against the third parties allegedly in possession of the collateral. Johnnie subsequently dropped his cross-complaint against these parties.

Johnnie contends FSB's action in causing the dismissal of these claims unjustifiably impaired the collateral and thereby released him from liability as guarantor, to the extent that it precluded his right of recourse against the collateral. If FSB had not released the parties in possession of the collateral, Johnnie claims he would have been subrogated to the right of FSB to recover the collateral after he paid the balance owed on the notes.

Johnnie and FSB argue this case under the Uniform Commercial Code, in particular Ark. Stat. Ann. § 85-3-606(1) (Add. 1961), which provides:

Impairment of recourse or of collateral. (1) The holder discharges *any party to the instrument* to the extent that without such party's consent the holder

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such

person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse. [Emphasis added]

We do not consider this provision controlling, because it only applies to "any party to the instrument," and does not encompass a person who has signed a separate guaranty agreement. In 5 W. Hawkland, *Uniform Commercial Code Series*, § 3-606:01 (1984), the author states:

Although intended to codify general suretyship defenses, section 3-606 is limited neither to parties generally regarded as sureties nor to parties who are "secondarily liable." Rather it applies to any person who as a party to the instrument is injured by the impairment of either his right of recourse against another person or the collateral. Section 3-606 does not provide a discharge to persons who have signed a separate guaranty or other nonnegotiable instrument and not the instrument itself. To determine the rights of these parties, reference must be made to the general suretyship law of the jurisdiction. [footnotes omitted]

*See also Ishak* v. *Elgin Nat'l Bank*, 48 Ill. App. 3d 614, 363 N.E.2d 159 (1977); *National Bank of Detroit* v. *Alford*, 65 Mich. App. 634, 237 N.W.2d 592 (1976) and *Fewox* v. *Tallahassee Bank & Trust Co.*, 249 So. 2d 55 (Fla. App. 1971).

Under our general suretyship law, a creditor has an obligation to preserve a surety's right of recourse in the collateral. In *First Nat'l Bank* v. *Waddell*, 74 Ark. 241, 85 S.W. 417 (1905), this court stated:

The creditor who has effects of the principal in his hand or under his control for the security of the debt is a trustee for all parties concerned; and if such effects are lost through the negligence or want of ordinary diligence of the

creditor, the surety is discharged, to the extent that he is injured, the same as if the effects had been lost by the positive act of the creditor.

In such case he is bound to be diligent in preserving such effects, to the same extent that any other trustee, similarly situated, is bound to use diligence. The kind of diligence required will be governed by the circumstances of each particular case.

72 C.J.S. *Principal and Surety*, § 150 (1987), provides substantially the same rule:

An obligee, who has securities or funds in his possession or control applicable to the payment of the secured debt, is under the obligation to the surety to use ordinary care and prudence to preserve them for the surety's benefit, and the surety is discharged from liability if the creditor relinquishes or loses them, or consents to a material alteration of the security to the prejudice of the surety, or by any act deprives the surety of the right of subrogation.

Although § 85-3-606 is not applicable, it appears to have its genesis in the common law. For this reason, the court of appeals' analysis in *Van Balen* v. *Peoples Bank & Trust Co.*, 3 Ark. App. 243, 626 S.W.2d 205 (1981) of the elements necessary to prove impairment of collateral under that section is helpful in assessing a creditor's obligation to preserve a surety's right of recourse in the collateral. In *Van Balen*, the court of appeals stated that the surety must prove two elements in order to be entitled to discharge—"that the holder of the note was responsible for the loss or impairment of the collateral, and the extent to which that impairment results in loss." We apply the same test.

We disagree with Johnnie's contention that it was FSB which was "responsible for the loss or impairment of collateral." Or, in the language of *First Nat'l Bank, supra*, that the collateral was "lost through the negligence or want of ordinary diligence of the creditor." Instead, it was the disbursement of the collateral by CISI, of which Johnnie was the chairman of the board of directors, and by Mary, Johnnie's daughter, which caused the impairment and led to the dismissal of FSB's claims for possession of the collateral.

Although the extent of Johnnie's involvement in the operations of the business of CISI is not totally clear, the record reflects that Johnnie was the sole incorporator of CISI. Johnnie later transferred his stock to Mary, but remained deeply involved in the various loans to Mary and to the corporation. These loans were initiated upon his letter of credit to the bank and were secured by his guaranty agreements. In addition, he continued to help Mary "with things," including negotiating with FSB for the best rates of interest on renewal of CISI's certificates of deposit, and maintained his position as chairman of the board of the corporation. When the corporation was on the verge of collapse, and the notes became unpayable, Mary sold the assets of CISI, including the collateral, to Johnnie's wife, brother- and sister-in-law, and to his ex-wife. Though a party to the litigation, Johnnie did not interpose any objections to the trial court's order dismissing with prejudice FSB's claim for possession of the collateral from the other parties to the suit, nor did he take issue with the trial court, sitting as the trier of fact when it determined that FSB was entitled to a judgment against him, Mary and CISI, jointly and severally. It was only prior to the entry of judgment that Johnnie filed a counterclaim alleging that, as a guarantor of the notes, he had a right to assert any rights enuring to the benefits of the principal. The trial court, by amended judgment dismissed the counterclaim and entered judgment against Johnnie.

While we agree that in ordinary circumstances a creditor will discharge a guarantor when it releases parties in possession of collateral securing a note, this rule should not discharge a guarantor when he is found by the trial court to be a person who at least in part created the problem. Johnnie admits in his brief that the transfer made finding the collateral more difficult, but asserts that this did not justify releasing those parties. Under all of the circumstances, the trial court found otherwise, and we cannot say that he was clearly wrong in that determination.

FSB filed a motion in this court pursuant to Sup. Ct. R. 9(e), for costs in supplementing the abstract, alleging that Johnnie's abstract was deficient in failing to adequately abstract the pleadings and testimony necessary for consideration of this appeal. We find that his abstract was not in violation of Rule 9 and that much, if not all, of FSB's supplemental abstract was not

necessary to the determination of the issue on appeal. The motion for costs is therefore denied. *See Arkansas State Hwy. Comm'n* v. *Taylor*, 238 Ark. 278, 381 S.W.2d 438 (1964).

Affirmed.

NEWBERN and PURTLE, JJ., dissent.

GLAZE, J., concurs.

DAVID NEWBERN, Justice, dissenting. First State Bank lost its claim to collateral when it inexplicably dismissed with prejudice its claims against those in possession. It thus breached its duty to the surety. While we may try to classify this decision as *ad hoc* in the future, I believe the precedent will prove to be bad, therefore, I dissent.

PURTLE, J., joins this dissent.

Supplemental Opinion on Rehearing
November 16, 1987
[Rehearing denied December 14, 1987.]

741 S.W.2d 624

SECURED TRANSACTIONS — IMPAIRMENT OF COLLATERAL — COURT ERRED IN ORIGINAL OPINION — APPELLANT WAS DISCHARGED AS GUARANTOR AS A MATTER OF LAW. — The Supreme Court erred in the original opinion in this case in concluding that appellant was responsible for impairment of the collateral, as the court's concern should have been limited to the activities of the appellee creditor, who failed to preserve appellant's right of recourse in the collateral by discharging its claim against all parties in possession with prejudice; thus, regardless of appellant's involvement in the movement of collateral, appellee, in dismissing the claim with prejudice, discharged appellant as guarantor as a matter of law.

JACK HOLT, JR., Chief Justice. Under Arkansas Supreme Court and Court of Appeals Rule 20(g), we consider petitions for rehearing which call our attention to specific errors of law or fact which our opinion is thought to contain. In doing so, we find a mistake in law in our opinion because we considered the wrong issue; that is, we concentrated on Myers' activity as surety, rather

than on what First State Bank of Sherwood ("FSB") as creditor did with respect to the collateral.

In our opinion, we noted that a creditor has an obligation to preserve a surety's right of recourse in the collateral. *First Nat'l Bank* v. *Waddell*, 74 Ark. 241, 85 S.W. 417 (1905). However, we qualified this proposition by stating:

> While we agree that in ordinary circumstances a creditor will discharge a guarantor when it releases parties in possession of collateral securing a note, this rule should not discharge a guarantor when he is found by the trial court to be a person who at least in part created the problem.

> . . .

> We disagree with Johnnie's contention that it was FSB which was "responsible for the loss or impairment of collateral." Or, in the language of *First Nat'l Bank, supra*, that the collateral was "lost through the negligence or want of ordinary diligence of the creditor." Instead, it was the disbursement of the collateral by CISI, of which Johnnie was the chairman of the board of directors, and by Mary, Johnnie's daughter, which caused the impairment and led to the dismissal of FSB's claims for possession of the collateral.

In doing so, we erred in concluding that Myers was responsible for impairment of the collateral as our concern should have been limited to the activities of FSB as creditor. FSB failed to preserve Myers' right of recourse in the collateral by discharging its claim against all parties in possession with prejudice. Regardless of Myers' involvement in the movement of collateral, the fact remains that FSB, in dismissing the claim with prejudice, discharged Myers as guarantor as a matter of law. *First Nat'l Bank* v. *Waddell, supra.*

Rehearing granted.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. Recently, this court had occasion to change a long-standing rule in creditor-debtor cases by deciding a secured creditor's right to a deficiency judgment under the Uniform Commercial Code is absolutely barred if the creditor failed to notice the debtor as required under the Code. *First State Bank of Morrilton* v. *Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1986). In my view, the majority, by granting appellant's rehearing, is modifying Arkansas's settled general surety law as it pertains to a creditor's obligation to preserve a surety's right of recourse in collateral. It does so by applying Arkansas's surety law to protect a guarantor—appellant in this case—whose actions were never intended to be protected under that law.

This court in *First National Bank* v. *Waddell*, 74 Ark. 241, 85 S.W. 417 (1905) stated the applicable rule of law as follows:

> The creditor who has effects of the principal in his hand or under his control for the security of the debt is a trustee for all parties concerned; and *if such effects are lost through the negligence or want of ordinary diligence of the creditor, the surety is discharged, to the extent that he is injured*, the same as if the effects had been lost by the positive act of the creditor.

> In such case *he is bound to be diligent in preserving such effects, to the same extent that any other trustee, similarly situated, is bound to use diligence.* The kind of diligence required will be governed by the circumstances of each particular case. (Emphasis supplied.)

In the present case, the appellant—not the appellee—was responsible for any impairment to the collateral securing the CISI loan. As pointed out in our earlier opinion, appellant was the sole incorporator and is the chairman of the board of CISI. He was deeply involved in his daughter and CISI obtaining the loans in issue here from the appellee. At the least, appellant as an officer of CISI must be imputed with the knowledge of his daughter's disposal of the loan collateral. At most, a strong inference exists that appellant had actual knowledge of the disposition of the

collateral, since his own wife acquired some of the assets (collateral), not to mention the acquisitions made by his other relatives. The evidence supports the conclusion that it was appellant's and CISI's actions that were responsible for any collateral impairment, not the actions or negligence of appellee. The trial judge's holding is consistent with such a finding.

The trial judge's decision is in keeping with Arkansas's general surety law when holding the appellant liable under his guarantee agreement with the appellee. This court should not (and I cannot) say the trial court was clearly erroneous—which is necessary to justify the reversal of this case. Of course, this court's granting of appellant's petition for rehearing in this case also reverses this case. In reversing, we permit the ones who caused the wrongful disposal and impairment of the collateral to benefit from their wrong.

Appellee's only mistake (other than making the loan to appellee's daughter and CISI in the first place) was its concerted, but unsuccessful, effort to locate the loan collateral. Appellee's attempt in this respect accorded appellant a favor to which he was unentitled by law. For this, the majority court punishes appellee by cancelling appellant's surety obligation even though appellant was a co-author of disposing of the collateral, in part, to some of his relatives. While Arkansas's law favors guarantors so as to protect their right of recourse, such actions as those manifested here by appellant-guarantor were never intended to be covered under that law.

In conclusion, I would add that my major difference with our earlier opinion was that it appeared this court was holding that the Code did not apply, but the opinion then proceeded to discuss § 85-3-606 as if that Code provision did apply. In doing so, the opinion made reference to *Van Balen* v. *Peoples Bank & Trust Co.*, 3 Ark. App. 243, 626 S.W.2d 205 (1981), which involved that statute. After having applied our state general surety law, I believe we were in error for discussing the Code any further. To do so served only to confuse any reader of the opinion, leaving them

to wonder what law we actually used in reaching our decision. My opinion then, and now, is that the general surety law controls, and Code provisions §§ 85-9-606 and -9-311 have no application to the facts of this case.

I would deny the petition for rehearing.

HAYS, J., joins in this dissent.