FIRST NATIONAL BANK of Crossett, Crossett, Arkansas
*v.* Richard E. GRIFFIN

91-65                                                              832 S.W.2d 816

Supreme Court of Arkansas
Opinion delivered June 29, 1992
[Rehearing denied September 28, 1992.*]

---

* Glaze, J., and Special Justice Jerry Pinson would grant rehearing. Holt, C.J., and Dudley and Brown, JJ., not participating.

166

*Arnold, Hamilton & Streetman*, by: *Thomas S. Streetman*, for appellant.

*Hopkins Law Firm*, by: *Gregory M. Hopkins*, for appellee.

ROBERT M. CEARLEY, JR., Special Chief Justice. This is a suit on a guaranty. Our jurisdiction is pursuant to Rule 29(c) as the case involves the interpretation or construction of an act of the General Assembly, namely, 1961 Ark. Acts 185, § 3-606. Appellant, First National Bank of Crossett (the Bank), raises

three issues on appeal. First, it argues that the trial court erred in admitting parol evidence to vary the terms of the guaranty agreement which, it maintains, is clear and unambiguous. Second, it argues that the impairment of collateral defense contained in Ark. Stat. Ann. § 85-3-606 (Add. 1961) (currently Ark. Code Ann. § 4-3-606 (1987) (repealed 1991)), is not available to one who executes a separate guaranty and, alternatively, that the defense was waived by the express language of the guaranty agreement. Third, it argues that the trial court erred in failing to award an attorney's fee pursuant to the terms of the guaranty agreement. We reverse and remand.

## FACTS

On May 1, 1986, the Bank loaned Bearhouse, Inc. $490,000.00. The note was payable on demand or on May 1, 1987, and was secured by a mortgage on Ashley County real estate on which was situate a grain warehouse and office. Bearhouse stock was owned in equal shares by Appellee Richard E. Griffin, Cockrum, Couch and Young. Each was an officer and director of the corporation. The Bank required that each shareholder execute a separate guaranty agreement guaranteeing payment of 25% of the Bearhouse note. Before the note matured, Bearhouse closed its business in Ashley County and ceased operations. Bearhouse was later placed in involuntary bankruptcy and defaulted on the note. The Bank made demand upon each of the guarantors to pay his pro rata share of the debt. No payment was made and the Bank sued each of the guarantors. Couch filed bankruptcy and the proceedings were stayed as to him. Appellee Griffin answered alleging that the Bank had impaired the collateral by failing to properly perfect its security interest and failing to realize upon the collateral in a commercially reasonable manner, resulting in his release pursuant to Section 85-3-606. Griffin counterclaimed alleging misrepresentation, negligence, and breach of fiduciary duty. The Bank contended (1) that the defense of impairment of collateral does not apply to a party who executes a separate guaranty, and (2) that Griffin waived the defense under the express wording of the guaranty agreement.

The Bank moved for summary judgment. Cockrum and Young failed to appear at the hearing on the motion for summary

judgment and summary judgment was granted as to each of them in the amount of $162,224.61. Griffin filed a response to the motion but did not file counter affidavits or other evidence in opposition. The motion was taken under advisement but never decided.

The case was tried to the court without a jury on February 13, 1990. The evidence established that, as of that date, there was due and owing on the note $683,413.91, including $490,000.00 in principal, plus accrued interest, and advances for taxes and insurance and attorney's fees. Griffin was allowed to testify, over the objection of the Bank, that he had held separate discussions with an officer of the Bank prior to the execution of the guaranty and that Griffin had only agreed to guarantee 25% of any *deficiency*. Griffin further testified that the value of the collateral was at least $450,000.00 at the time of the bankruptcy of Bearhouse and that, if the guarantors had been allowed to sell the property at that time, his share of the resulting deficiency would have been $17,000.00. The trial court held, in a three sentence opinion, that Griffin owed $17,000.00. of the original debt plus interest from the date of default. Judgment was entered in favor of the Bank in the amount of $17,000.00. From that Judgment comes this appeal.

## I. PAROL EVIDENCE

The parol evidence rule prohibits introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement. It is a substantive rule of law rather than a rule of evidence. Its premise is that the written agreement itself is the best evidence of the intention of the parties. In *Farmers Coop. Ass'n* v. *Garrison*, 248 Ark. 948, 952, 454 S.W.2d 644, 646 (1970), we said: "It is a general proposition of the common law that in the absence of fraud, accident or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings and verbal agreements on the same subject." On the other hand, the parol evidence rule does not prohibit the introduction of extrinsic evidence where it would aid the court in interpreting the meaning of particular language of a contract, such as when the contract contains terms of art or words which have acquired their meaning through a course of dealing or custom or usage. *Les-Bil, Inc.* v. *General*

*Waterworks Corp.*, 256 Ark. 905, 511 S.W.2d 166 (1974). Nor does the parol evidence rule prohibit the court's acquainting itself with the circumstances surrounding the making of the contract. *Stokes* v. *Roberts,* 289 Ark. 319, 711 S.W.2d 757 (1986); *Schnitt* v. *McKellar*, 244 Ark. 377, 427 S.W.2d 202 (1968). The initial determination of the existence of ambiguity rests with the court and, if the writing contains a term which is ambiguous, parol evidence is admissible and the meaning of the ambiguous term becomes a question of fact for the factfinder. *C & A Constr. Co., Inc.* v. *Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974).

The Bank contends that the trial court erred in admitting parol evidence to vary the terms of the guaranty agreement which, it maintains, is clear and unambiguous. Each guaranty agreement was prepared on a printed form. The printed language in each form is identical. The guaranty agreement executed by Griffin contains the following typewritten language: "guarantee (sic) limited to 25% of outstanding debt." The other three guaranty agreements contain the following language which is typewritten: "GUARANTEE (sic) LIMITED TO 25% OF TOTAL INDEBTEDNESS." Griffin first argued in the trial court and here that the language of the guaranty agreement which he executed is clear and unambiguous and that the term "outstanding debt" limits his liability to only 25% of the amount outstanding after application of proceeds from the sale of collateral. Alternatively, Griffin urged that the term "outstanding debt" is ambiguous and that parol evidence is therefore admissible to establish the intention of the parties.

We cannot agree to either proposition. In reaching our conclusion, we apply three well-established principles of contract law. First, as we have long recognized, the first rule of interpretation of a contract is to give to the language employed the meaning which the parties intended. *Lee Wilson & Co.* v. *Fleming*, 203 Ark. 417, 156 S.W.2d 893 (1941). Second, in construing any contract, "[w]e must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning." *Farm Bureau Mut. Ins. Co. of Arkansas, Inc.* v. *Milburn*, 269 Ark. 384, 386, 601 S.W.2d 841, 842 (1980). Third, "[d]ifferent clauses of a contract must be read together and the contract construed so that all of its

parts harmonize, if that is at all possible, and, giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable, is error." *Continental Casualty Co.* v. *Davidson*, 250 Ark. 35, 41, 463 S.W.2d 652, 655 (1971). In *Fowler* v. *Unionaid Life Ins. Co.*, 180 Ark. 140, 144-145, 20 S.W.2d 611, 613 (1929), we set out the rules of construction to which we have consistently adhered:

> It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. In fact,it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument, and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from the beginning to end, and all its terms must pass in review, for one clause may modify, limit or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized, if that course is reasonably possible. Each of its provisions must be considered in connection with the others and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. [Citation omitted].

We must then look to the contract as a whole and the circumstances surrounding its execution to determine the intention of the parties.

The guaranty agreement here contains the following language:

This guaranty shall be a continuing, absolute and unconditional guaranty. . . .

. . . .

Said Bank shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on said indebtedness, obligations and liabilities, or any part of them. *In order to hold the undersigned liable hereunder, there shall be no obligation on the part of said Bank at any time to first resort to, make demand on, file claim against, or exhaust its remedies against the Debtor, any one or more of the undersigned, or other persons or corporations, their properties or estates, or to resort to and exhaust its remedies against any collateral, security, property, liens or other rights whatsoever.* [Emphasis added.]

Construing the guaranty agreement as a whole, as we must, we find it clear and unambiguous. The dictionary definition of the term "outstanding" includes the terms "undischarged," "uncollected" and "unpaid." The plain language of the agreement provides that the Bank may call upon the guarantor to honor his guaranty without first resorting to remedies against the debtor, other guarantors or collateral. It is simply not possible to equate "outstanding debt" to "deficiency," as Griffin urges, without closing our eyes to the other provisions of the contract. Griffin points to the difference in the language of the guaranty executed by him and that executed by the other guarantors as supporting his argument. All four guaranty agreements were prepared from the same form. They differ only in the typewritten language quoted above. Griffin executed his guaranty the day before the other three guarantors. He was at the time, and had been for over 20 years, chairman of the board of another bank and a respected attorney. There is nothing about the circumstances surrounding the execution of the guaranty which is supportive of the tortured definition of the term "outstanding debt" that is urged here. We can ascribe no different meaning to that term that we ascribe to the term "total indebtedness" when read in the context of this agreement. We hold that, under either wording, the guarantor is obligated to pay the designated percentage of all sums due pursuant to the terms of the guaranty agreement. To hold

otherwise would render a substantial portion of the language of the guaranty agreement totally ineffectual.

■ Finding no ambiguity, we hold the parol evidence should not have been admitted. While Griffin counterclaimed alleging misrepresentation, a claim which would have supported the admission of parol evidence, the trial court entered no finding on the claim and no cross-appeal was taken. Therefore, extrinsic evidence of intentions or antecedent agreements at variance with the terms of the contract should not have been admitted. The trial court erred in allowing its admission. We therefore reverse and remand for a new trial.

Although we reverse on the Bank's first argument, we address its second and third arguments to the extent they may arise on the remanded new trial.

## II. IMPAIRMENT OF COLLATERAL DEFENSE

■ Griffin argued successfully in the trial court that the Bank's negligence caused a two-year delay in the sale of the collateral during which it declined in value, and that, pursuant to Section 85-3-606, his obligation under the guaranty is discharged. We held in *Myers* v. *First State Bank of Sherwood*, 293 Ark. 82, 732 S.W.2d 459 (1987), that this statutory provision has no application where one executes a separate guaranty.

■ Additionally, the guaranty here provides that, "This guaranty shall be a continuing, absolute and unconditional guaranty. . ." In *Lindell Square Ltd. Partnership* v. *Savers Fed. Sav. & Loan Ass'n*, 27 Ark. App. 66, 76, 766 S.W.2d 41, 47 (1989), the Court of Appeals was called upon to determine whether the parties to a guaranty intended that the guarantor would be liable for the amount due on bonds at the time of default or for only the deficiency remaining after resorting to other security. The guaranty there likewise provided that the guarantor's obligations were unconditional and absolute.In holding that the guarantor's liability was intended to be in addition to and independent of other security, the court noted our decision in *Bank of Morrilton* v. *Skipper, Tucker & Co.*, 165 Ark. 49, 263 S.W.54 (1924), in which we said, "Under an absolute guaranty, the liability of the guarantor becomes fixed upon the debtor's default."

The guaranty agreement here also contains the following provisions:

> All diligence in collection or protection, and all presentment, demand, protest and/or notice, as to any and everyone, of dishonor and of default and of non-payment and of the creation and existence of any and all of said indebtedness, obligations and liabilities, and of any security and collateral therefor, and of the acceptance of this guaranty, and of any and all extensions of credit and indulgence hereunder, are hereby expressly waived.
>
> . . . .
>
> No act of commission or omission of any kind, or at any time, upon the part of said Bank in respect to any matter whatsoever, shall in any way affect or impair this guaranty.

The clear language of the guaranty agreement indicates that the guarantor's liability was intended to be absolute and unconditional—the guaranty agreement so provides. Any recourse against collateral was clearly intended to be in addition to rights against the guarantor who expressly waived any defense based upon impairment of collateral.

### III. ATTORNEY'S FEE

The Bank argues, pursuant to Ark. Code Ann. § 4-56-101 (Repl. 1991), which expressly authorizes enforcement of such a provision in a promissory note, that the Bank is entitled to recover attorney's fees not to exceed ten percent of the amount of principal and accrued interest as provided in the Bearhouse note. We do not consider the provision in the promissory note because the Bank has failed to abstract the pertinent language as required by Supreme Court Rule 9. However, the guaranty agreement provides that the guarantor agrees:

> to pay all expenses, legal and/or otherwise (including court costs and attorney's fees, paid or incurred by said Bank in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this guaranty).

We have held many times that, notwithstanding that the parties

have contracted for the payment of attorney's fees, such fees cannot be recovered unless expressly provided for by statute. *Damron* v. *University Estates, Phase II, Inc.*, 295 Ark. 533, 750 S.W.2d 402 (1988); *Harper* v. *Wheatley Implement Co.*, 278 Ark. 27, 643 S.W.2d 537 (1982); *Brady* v. *Alken, Inc.*, 273 Ark. 147, 617 S.W.2d 358 (1981); *Romer* v. *Leyner*, 224 Ark. 884, 277 S.W.2d 66 (1955). Prior to the enactment of 1987 Ark. Acts 519, now codified at Ark. Code Ann. § 16-22-308 (Supp. 1991), the circumstances under which a party could recover attorney's fees were severely restricted. Act 519 of 1987 provides that in any civil action of a class enumerated therein, "the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs." The classes of civil action to which Act 519 applies were expanded by amendment by 1989 Ark. Acts 800 which added actions for breach of contract. The legislature has thus granted to the courts the discretion to award a reasonable attorney's fees to a prevailing party under specific circumstances even absent agreement of the parties providing for payment of such fees. This grant of authority to award such fees absent agreement between the parties implicitly authorizes the courts to enforce such an agreement between the parties where one exists, as long as the other conditions of the statute are met. We have held that the statute should be given retrospective application. *Barnett* v. *Arkansas Transport Co.*, 303 Ark. 491, 798 S.W.2d 79 (1990); *City of Fayetteville* v. *Bibb*, 30 Ark. App. 31, 781 S.W.2d 493 (1989). The failure to award a reasonable attorney's fee here was error. Upon remand, the trial court should award an appropriate attorney's fee pursuant to the agreement of the parties.

Reversed and remanded.

WILLIAM S. MILLER, JR., Special Justice, joins in this opinion.

GLAZE, J., and JERRY D. PINSON, Special Justice, dissent.

HOLT, C.J., and DUDLEY and BROWN, JJ., not participating.

TOM GLAZE, Justice, dissenting. The factual issue is whether the appellee, Richard E. Griffin, could testify concerning the meaning of the term "outstanding debt' as used in a guaranty given him to sign by the appellant, First National Bank of

Crossett (Bank). Griffin and three other men were shareholders of Bearhouse, Inc., which secured a loan from the Bank. These four shareholders guaranteed payment of Bearhouse's note to the Bank. The primary legal issue in this appeal is well-framed by Special Associate Justice Jerry D. Pinson in his dissent, viz., whether the trial court abused its discretion in allowing Griffin to testify.

Special Justice Pinson points out that Griffin's guaranty form as written and furnished by the Bank was ambiguous. He emphasizes the obvious, stating the term "outstanding indebtedness" employed in Griffin's guaranty differs from the wording "total indebtedness" used in the guaranties signed by the other three shareholders. This difference alone raises the question, what did the parties intend by using these dissimilar terms?

As the majority correctly mentions in its opinion, the term "outstanding indebtedness" in Griffin's guaranty also conflicts with another provision contained in the same guaranty. That provision authorizes the Bank to demand Griffin to honor his guaranty without the Bank first attempting to satisfy the Bearhouse debt from other sources. Clearly, the term "outstanding indebtedness" suggests (as Griffin testified) that Griffin would be liable for any remaining Bearhouse debt after the Bank sought its other available legal remedies. Obviously, because of these conflicting terms, confusion exists concerning which provision controls — the "outstanding indebtedness" restriction that limited Griffin's liability to a deficiency amount determined after the Bank pursued its other remedies or the guaranty provision allowing the Bank to go directly against Griffin.

Instead of recognizing the Bank's and Griffin's right to explain why they used these terms and provisions in Griffin's guaranty, the majority summarily concludes the term "outstanding indebtedness" had to mean "total indebtedness" or else the guaranty provision providing the Bank did not have to first resort to other remedies would be rendered "totally ineffectual." I suggest such a conclusion strains logic. Such rationale could just as easily be used to support Griffin's position — the term "outstanding indebtedness" should control or else its meaning would be rendered "totally ineffectual" by the provision permitting the Bank to hold Griffin liable without first seeking its other

collection remedies.

The majority opinion simply ignores the issue as to whether the trial court had the discretion to allow the parties to testify regarding what the they intended by using the terms they did in the Griffin guaranty instrument. While parol evidence is not admissible to vary the terms of a written contract, it is admissible to show what the parties intended by the language adopted. *Jackson County Gin Co.* v. *McQuistion*, 177 Ark. 60, 5 S.W.2d 729 (1928). Here, Griffin's testimony did not vary the term "outstanding indebtedness," but instead explained why that term was used rather than "total indebtedness."

In support of its decision, the majority court cites the case of *Fowler* v. *Unionaid Life Ins.*, 180 Ark. 140, 20 S.W.2d 611 (1929), for the rule that, in construing a contract, the intention of the parties is to be gathered, not from particular words and phrases, but from the whole court of the agreement. The rule relied upon by the court concludes as follows:

> Seeming contradictions must be harmonized, if that course is possible. Each of its provisions must be considered in connection with the others and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions.

At the risk of being repetitious, the majority court recognized the common meaning of "outstanding indebtedness," which would require the Bank to seek its other legal collection remedies before it looked to Griffin for payment. Nevertheless, it declined to give effect to the true meaning of "outstanding indebtedness" and instead, like Houdini, the majority magically construes that term to mean "total indebtedness" because that latter term is more consistent with the guaranty provision allowing the Bank to go directly against Griffin for payment of the Bearhouse note. By such tortured logic, the majority purports to give effect to all of the provisions of Griffin's guaranty, yet such a construction altogether eradicates from the guaranty the important term "outstanding indebtedness," which term's common sense meaning limited Griffin's liability to the Bank in this matter. In other words, the majority court's construction of the Griffin guaranty gives no effect or substance to this term which

was specifically inserted by the parties into the Bank's guaranty form. Such a construction is certainly inconsistent with the precedent cited in the majority opinion.

In conclusion, the trial court did not abuse its discretion when confronted with these facts. Griffin signed his guaranty form at a different time and place than the other three shareholders, and as Special Justice Pinson point out, Griffin's interest in Bearhouse's day-to-day operation was limited. As a consequence, Griffin had good reason to limit his liability as he tried to do. The trial court had every right to hear testimony bearing on the parties' intent when they signed these instruments. In doing so, the court determined the parties limited Griffin's liability to the outstanding debt or deficiency amount remaining after the Bank otherwise exhausted its other remedies and sources of payment. Because I believe the trial court did not abuse its discretion in allowing Griffin's testimony concerning the parties' intent, I would affirm.

JERRY D. PINSON, Special Justice, dissenting. The real issue in this case is whether the trial court abused its discretion and committed error in finding the Griffin guaranty to be ambiguous and therefore allowing parol evidence to be admitted. The majority construed the guaranty agreement as a whole and found it clear and unambiguous. In coming to this conclusion, the majority found the term "outstanding debt" as used in the Griffin guaranty meant the same as "total indebtedness", as used in the other three guaranties. The majority court gave a tremendous amount of weight to the fine print boiler plate provisions of the form guaranty.

This court has stated on numerous occasions that the initial determination of the existence of an ambiguity rests with the court and if ambiguity exists, then parol evidence is admissible and the meaning of the term becomes a question for the fact finder. *C. & A. Construction Company* v. *Benning Construction Company*, 256 Ark. 621, 509 S.W.2d 302 (1974). All four guaranty agreements were prepared from the same form. All four guaranties were signed within one day of each other. Why was the typed portion of Griffin's guaranty different than the other three if they all meant the same? Edward L. Holt, President of First National Bank of Crossett, the appellant, testified that a repre-

sentative of the bank delivered the guaranty to Griffin to execute. There was also testimony to indicate that the bank prepared all four guaranties. There is absolutely no evidence that Griffin prepared the guaranty. It is a well established rule of contract law that documents that contain ambiguities will be construed against the party who drafted them. *Barton* v. *Perryman*, 265 Ark. 228, 577 S.W.2d 596 (1979). The Court of Appeals stated in *B.F. Shamburger* v. *The Union Bank of Benton*, 8 Ark. App. 259, 650 S.W.2d 596 (1983) that the rule in Arkansas with respect to an interpretation of a guaranty agreement is that the guarantor is entitled to have his undertaking strictly construed and he cannot be held liable beyond the strict terms of his contract.

The majority's rationale in the instant case that the fact that Griffin was at the time, and had been for over 20 years, Chairman of the Board of another bank and a respected attorney is much more supportive of the fact that Griffin would discern the difference in the terms "outstanding debt" and "total indebtedness". Also, it was very rational for the Griffin guaranty to be less than the other three guarantors in that Griffin was the only one of the four guarantors that wasn't a full time employee of the company.

The record clearly reflects that an ambiguity was created by the appellant in using the term "outstanding indebtedness" in appellee's guaranty and the term "total indebtedness" for the other guarantors in the same transaction. Parol evidence is admissible to resolve an ambiguity in a contract to determine that particular meaning the parties intended the ambiguous provision to have. *Shamburger* v. *The Union Bank of Benton, supra.*

I am of the opinion that the trial court did not abuse its discretion and commit error in finding the Griffin guaranty to be ambiguous and therefore allowing parol evidence to be admitted. I respectfully dissent.

GLAZE, J. joins in this dissent.